UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH AGOSTINO,

    Plaintiff,

v.                                                Case No: 8:18-cv-1202-T-36TGW

ALLY FINANCIAL INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon Defendant's Motion to Compel Arbitration and Dismiss Action (Doc. 12), Plaintiff's response in opposition (Doc. 13), Defendant's reply (Doc. 19) and Plaintiff's surreply (Doc. 23). In the motion, Defendant contends that the arbitration provision within the car purchase agreement between Plaintiff and its assignor requires that Plaintiff submit his statutory claims to arbitration. The Court, having considered the motion and being fully advised in the premises, will deny, without prejudice, Defendant's Motion to Compel Arbitration and Dismiss Action.

    **I.    BACKGROUND**

Plaintiff, Joseph Agostino, filed his Complaint alleging that Defendant Ally Financial, Inc. ("Ally") engaged in debt collection activity in violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559, *et seq*. ("FCCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Doc. 1. Agostino alleges the following. Ally made several unauthorized phone calls to his cellular telephone number using "an automatic telephone dialing system, a predictive telephone dialing system, and /or an artificial or pre-recorded voice." *Id*. at ¶ 10. Ally made these calls to collect a financial obligation from Plaintiff which consists of an

alleged debt "for a consumer loan obtained primarily for personal, family, or household purposes." *Id.* at ¶ 12. Plaintiff asked Ally to stop placing calls to his cellular telephone, but Ally continued to do so. *Id.* at ¶¶ 16, 17.

Ally filed this Motion asserting that the alleged debt to which the Complaint refers is a Retail Installment Sale Contract ("RISC") between Agostino[1] and Bill Currie Ford, Inc. (the "Seller") to purchase a 2012 Nissan Titan on October 29, 2016. Doc. 12-1 at 1. Ally contends that shortly after Agostino and the Seller entered into the RISC, the Seller assigned all of its rights and interests to Ally. *See* Doc. 12 at 4 (citing Doc. 12-1 at 1). The RISC contains the following relevant language:

> RETAIL INSTALLMENT SALE CONTRACT
> –SIMPLE FINANCE CHARGE
> (WITH ARBITRATION PROVISION)
> ...
>
> Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
>
> ...
>
> Seller assigns its interest in this contract to Ally Financial (Assignee) under the terms of Seller's agreement(s) with Assignee. ["Assigned without Recourse" option marked].
>
> ...
>
> You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

---

[1] Jacqueline Agostino is also a party to the RISC but is not a party in this lawsuit. *See* Doc. 1, Doc. 12 at 4, n 1.

> ...
>
> ARBITRATION PROVISION
>
> ...
>
> EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
>
> ...
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Doc. 12-1 at 1-2.

On June 11, 2018, Ally filed its Answer and Affirmative Defenses in which it asserted that "Plaintiff's claims are subject to an Arbitration Agreement requiring mandatory and binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*." Doc. 10 at 6 ¶ 2. The next day Ally's counsel contacted Plaintiff's counsel to request dismissal based on the Arbitration Agreement; Plaintiff's counsel refused. Doc. 12 at 5.

## II. LEGAL STANDARD

The Federal Arbitration Act [FAA], 9 U.S.C. § 1, *et seq.*, codifies a "liberal federal policy favoring arbitration," and requires the courts to rigorously enforce agreements to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). That policy rules out any "judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals," *id.* at 627; and establishes that the courts should resolve doubts concerning the scope of arbitrable issues in favor of arbitration, whether the problem at hand is the construction of the

contract language itself or an allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983).

Questions of arbitrability must be addressed "with a healthy regard for the federal policy favoring arbitration." *Id.* at 24. Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitrate any dispute to which he has not agreed to submit. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 297 (2010); *Lawson v. Life of the South Ins. Co.,* 648 F.3d 1166, 1170 (11th Cir. 2011). The FAA requires a court to stay its proceedings pending arbitration provided "the applicant for the stay is not in default in proceeding with the arbitration." 9 U.S.C. § 3.

Within this district, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Owings v. T-Mobile USA, Inc*., 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013). Rule 12(b)(1) motions come in two forms: factual attacks and facial attacks. *Id.* Courts deem a motion to compel arbitration as a factual attack because it asserts that a provision in an extrinsic document— an arbitration clause contained within the body of a contract—deprives the court of its power to adjudicate the claims. *Id.*

On a factual attack, the trial court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897 (1981)). District courts within the Eleventh Circuit have long applied the summary judgment standard when ruling on a Rule 12(b)(1) motion to dismiss that asserts a factual attack

4

on subject matter jurisdiction, when the merits of the case are intertwined with the jurisdictional question. *See id.* at 1530.

The party seeking to avoid arbitration must deny the existence of a valid agreement to arbitrate, identifying some evidence in the record to substantiate that denial. *Magnolia Capital Advisors, Inc. v. Bear Sterns & Co.*, 272 Fed. Appx. 782, 785 (11th Cir. 2008). The evidence in the record must be sufficient to render colorable that party's denial of the existence of a valid agreement. *Id.* (quoting *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 819 (11th Cir. 1993)). The district court must resolve all doubt and inferences in the favor of the party denying the existence of a valid agreement. *Id.* at 785-86.

The Court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is ... in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore*, 827 F.3d at 1333) (citation and quotation marks omitted). When a genuine dispute exists, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Similar to a traditional summary judgment motion, the Court's examination of substantive law determines which facts are material. *Burch,* 861 F.3d at 1346 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.' " *Id.* (quoting *Bazemore*, 827 F.3d at 1329).

## III.    DISCUSSION

Defendant argues that the unambiguous terms of the Arbitration Agreement in the RISC compel Agostino to arbitrate his claims against Ally because they arise out of, or are related to,

the RISC. Ally requests an order compelling arbitration and dismissing this action. It asserts that it is the Seller's assignee and therefore able to compel arbitration under the RISC. Ally does not include an affidavit or declaration in support of its Motion, nor does it file a copy of the agreement referenced in the assignment. Surprisingly, in spite of the fact that Agostino raised this issue in its response, Ally did not attach either document to its reply.

Agostino argues that Ally relies solely on an "unauthenticated document, inadmissible hearsay, and the unsubstantiated representations of its counsel" to establish entitlement to an order compelling arbitration. Doc. 13 at 1. He argues the following: 1) Ally has not met the summary judgment standard for establishing that a valid agreement to arbitrate exists; 2) if it does exist, Ally is not an assignee entitled to enforce it; and 3) his claims do not arise from the RISC, thus, his TCPA and FCCPA claims are not subject to arbitration. *Id.* at 7-10. Significantly, Agostino does not deny that he signed the contract attached to the Motion. But because Ally did not attach the "Seller's agreement" referenced in the RISC, he argues, it cannot now assert that it is an assignee who is able to compel arbitration of these claims.

In this case, Ally must submit admissible evidence to support its Motion. And because Plaintiff contests whether an agreement to arbitrate exists, the Court will analyze the merits of the Motion under a "summary judgment-like" standard. *Burch*, 861 F. 3d at 1346.

The Court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 255. And the Court must view all evidence and inferences drawn from the underlying facts in the light most favorable to Agostino as the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). However, a dispute is not " 'genuine' if it is unsupported by the

evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.' " *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting *Anderson*, 477 U.S. at 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id*. But "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (2013)).

Ally has not met its burden to provide competent evidence upon which this Court can rely to find that either an agreement to arbitrate exists, or that Ally is an assignee entitled to enforce the arbitration agreement.[2] The Court is unpersuaded by Ally's arguments regarding self-authenticating documents. *See* Doc. 19 at 3-4. The RISC is not in an admissible form because no person authenticates it or establishes it as Ally's business record or otherwise meets an exception to the hearsay rule. Further, and more importantly, the assignment is based on a separate document (the "Seller's agreement with Assignee") which is not in the record in any form. Interestingly, although Ally does not provide an affidavit or declaration to authenticate the RISC or establish it as a business record, Agostino does not file any admissible evidence contesting it either.

---

[2] The Court notes that Plaintiff's analysis regarding the arbitrability of consumer collection cases is overbroad. Plaintiff's TCPA and FCCPA claims may be arbitrable; there is no blanket prohibition against arbitrating these claims. Several courts have compelled TCPA claims to arbitration. *See, e.g., Shea v. BBVA Compass Bancshares, Inc*., 1:12-CV-23324-KMM, 2013 WL 869526, at *1 (S.D. Fla. Mar. 7, 2013). The issue is whether these claims are within the scope of the particular arbitration agreement. *See Gamble v. New England Auto Fin., Inc.*, 735 Fed. Appx. 664, 667 (11th Cir. 2018) (examining the terms of the contract at issue to determine whether its scope included TCPA claims where plaintiff alleged she paid off her auto loan and received text messages soliciting a new loan agreement).

Nonetheless, because federal law strongly favors arbitration, the Court will deny the Motion, without prejudice, and permit Ally to file a renewed motion to compel arbitration with the appropriate evidence, if it exists. *Accord Wood v. Portfolio Recovery Associates, LLC*, 8:14-CV-3044-MSS-AEP, 2015 WL 12868067, at *1 (M.D. Fla. Apr. 1, 2015).[3] Accordingly, the Court will deny this Motion, without prejudice.

**Accordingly, it is ORDERED**:

1. Defendant's Motion to Compel Arbitration and Dismiss Action (Doc. 12) is **DENIED** without prejudice.

2. To the extent Defendant decides to file a renewed motion to compel arbitration, it shall do so on or before December 7, 2018.

3. This case is stayed until such time as the Court rules on the renewed motion to compel arbitration. If a renewed motion to compel arbitration is not filed, the stay of these proceedings will be lifted on or about December 10, 2018.

**DONE AND ORDERED** in Tampa, Florida on November 16, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[3] In *Wood*, the Defendant presented no evidence of either the purchase or the assignment of the accounts at issue which purportedly authorized it to enforce an arbitration agreement. 2015 WL 12868067 at *1. The Court denied the original motion to compel arbitration and permitted the defendant to submit an affidavit from its predecessor-in-interest confirming that the plaintiff's account was sold to the defendant. *Id*. The defendant also submitted the Bill of Sale which assigned "all rights, titles, and interest of Seller in and to those certain receivable, judgments or evidences of debt..." associated with the purchase of the credit card accounts. *Id*. Once the court had the proper evidence in the record, it analyzed the motion, granted it, and stayed the case pending arbitration. *Id*.