**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division**

**JOSEPH AGOSTINO,**

      **Plaintiff,**

**v.**                                      **Case No. 8:18-cv-1202-CEH-TGW**

**ALLY FINANCIAL INC.,**

      **Defendant.**

**DEFENDANT ALLY FINANCIAL INC.'S
MOTION AND MEMORANDUM IN SUPPORT TO
COMPEL ARBITRATION AND DISMISS ACTION**

**<u>EXHIBIT 1 – DECLARATION OF LEANDRIAN WRIGHT</u>**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

**JOSEPH AGOSTINO,**

       **Plaintiff,**

**v.**                                                 **Case No. 8:18-cv-1202-CEH-TGW**

**ALLY FINANCIAL INC.,**

       **Defendant.**

## DECLARATION OF LEANDRIAN WRIGHT

I, LeAndrian Wright, declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

1.      My name is LeAndrian Wright. I am a resident of the state of Texas. I am above the age of eighteen and am competent to testify to all matters contained herein.

2.      I am employee and an authorized representative of Ally Financial Inc. ("Ally"), and I am authorized to make this Declaration on behalf of Ally.

3.      I have personal knowledge of the facts contained in this Declaration by virtue of my position for Ally, my familiarity with the company's practices and procedures, and based upon my review of the relevant business records and other documents of Ally reference herein, which were created and maintained in the ordinary course of business. If I were called upon to testify to these facts, I could and would competently do so.

4.      I have reviewed the document attached hereto as **Exhibit A**, which was made and is maintained in the ordinary course of Ally's regularly conducted business activities, at the times noted in the document, by individuals with personal knowledge of the information contained

therein.  It is the regular practice of Ally to keep and maintain this document in the ordinary course of business.

5.      **Exhibit A** is a true and correct copy of the Retail Installment Contract (the "Contract") dated October 29, 2016, which Plaintiff Joseph A. Agostino entered with Bill Currie Ford Inc. ("Seller") and Ally to finance the purchase of a 2012 Nissan Titan, bearing Mr. Agostino's signature.  Mr. Agostino's signature is on the Contract.

6.      The Contract was assigned by the Seller to Ally.  The Contract states that "Seller assigns its interest in this contract to Ally Financial (Assignee) under the terms of Seller's agreement(s) with Assignee."  *See* Ex. A., p. 1.

7.      The agreement that governs assignment of contracts was originally formed between the Seller and GMAC Inc. ("GMAC").

8.      GMAC Inc. was rebranded in 2010, and the company name was changed to Ally Financial Inc.

9.      I have reviewed the document attached hereto as **Exhibit B**, which was made and is maintained in the ordinary course of Ally's (formerly GMAC) regularly conducted business activities, at the times noted in the document, by individuals with personal knowledge of the information contained therein.  It is the regular practice of Ally (formerly GMAC) to keep and maintain this document in the ordinary course of business.

10.     **Exhibit B** is a true and correct copy of the agreement between Seller and GMAC dated May 7, 2010, which governs the assignment of the Contract attached hereto.

11.     Mr. Agostino has never disputed the validity of the Contract, nor has he disputed his signatures on the Contract.

2

12.     Mr. Agostino has never disputed the assignment of the Contract from the Seller to Ally.

13.     The Contract contains a binding arbitration agreement.  *See* Ex. A.

14.     Ally is incorporated in Delaware, with its principal place of business in Michigan.

I have read this Declaration consisting of three (3) pages and affirm that the statements herein are based upon my own personal knowledge.  I declare, under penalty of perjury under the laws of the United States of America, that the foregoing statements are true and correct.

December __4__, 2018                                 _____

                                                                 LeAndrian Wright

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

**JOSEPH AGOSTINO,**

      **Plaintiff,**

**v.**                                                   **Case No. 8:18-cv-1202-CEH-TGW**

**ALLY FINANCIAL INC.,**

      **Defendant.**


**DEFENDANT ALLY FINANCIAL INC.'S**
**MOTION AND MEMORANDUM IN SUPPORT TO**
**COMPEL ARBITRATION AND DISMISS ACTION**


**EXHIBIT A – DECLARATION OF LEANDRIAN WRIGHT**

**RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE**
**(WITH ARBITRATION PROVISION)**

| Dealer Number | Contract Number |
| --- | --- |

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
| --- | --- | --- |
| JACQUELINE L AGOSTINO | JOSEPH R AGOSTINO | BILL CURRIE FORD INC |
| 3306 W PAUL AVE | 3306 W PAUL AVE | 5815 N DALE MABRY HWY |
| TAMPA, FL 33611 | TAMPA, FL 33611 | TAMPA, FL 33614 |

You, the Buyer (and Co-buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 11.399 % per year. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
| --- | --- | --- | --- | --- |
| USED | 2012 | NISSAN TITAN S | 1N6AA0ED9CN302895 | personal, business, agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
| --- | --- | --- | --- | --- |
| 11.399 % | $ 9055.90 | $ 23233.90 | $ 32339.90 | $ 32339.90 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
| --- | --- | --- |
| 72 | 448.90 | Monthly beginning 12/13/2016 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of each installment.

**Prepayment.** If you pay off all your debt early, you may have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**ITEMIZATION OF AMOUNT FINANCED**

| 1 Cash Price (including $ 891.00 sales tax) | $ 31605.05 |
| --- | --- |
| 2 Total Downpayment = | |
| Gross Trade-in Allowance | $ 5800.00 |
| Less Pay Off Made By Seller (e) | $ 6352.20 |
| Equals Net Trade-in | -$ 552.20 |
| + Cash | $ NA |
| + Other | NA |
| If total downpayment is negative, enter "0" and see 4I below) | $ 0.00 |
| 3 Unpaid Balance of Cash Price (1 minus 2) | $ 31605.05 |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | |
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies | |
| B Vendor's Single Interest Insurance Paid to Insurance Company | NA |
| C Other Optional Insurance Paid to Insurance Company or Companies | NA |
| D Optional Gap Contract | 895.00 |
| E Official Fees Paid to Government Agencies | NA |
| F Government Documentary Stamp Taxes | 81.50 |
| G Government Taxes Not Included in Cash Price | NA |
| H Government License and/or Registration Fees | 100.00 |
| I Government Certificate of Title Fees | NA |

**OPTION:** ☐ You pay no finance charge if this Amount Financed, item 6, is paid in full on or before NA.

**OPTIONAL GAP CONTRACT** SAFEGUARD Term 72 Mos.

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

**NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Seller BILL CURRIE FORD INC

ORIGINAL LIENHOLDER

OTHER IMPORTANT AGREEMENTS

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division**

**JOSEPH AGOSTINO,**

       **Plaintiff,**

**v.**                                      **Case No. 8:18-cv-1202-CEH-TGW**

**ALLY FINANCIAL INC.,**

       **Defendant.**


**DEFENDANT ALLY FINANCIAL INC.'S
MOTION AND MEMORANDUM IN SUPPORT TO
COMPEL ARBITRATION AND DISMISS ACTION**


**<u>EXHIBIT B – DECLARATION OF LEANDRIAN WRIGHT</u>**

## GMAC MASTER RETAIL-LEASE AGREEMENT

### I        Parties

This GMAC Master Retail-Lease Agreement ("Master Agreement") is made between GMAC Inc. ("GMAC") and   Bill Currie Ford, Inc.  ("Dealer") whose address is 5815 N. Dale Mabry Hwy, Tampa, Florida 33614  and whose federal tax identification number is ███████████████, and whose state tax exempt number is _____████████████████_____.

### II. Recitals

A.  In the ordinary course of its business, GMAC provides retail and lease accommodations to motor vehicle dealerships, and others, by taking assignment of motor vehicle retail installment sale and lease contracts that they, respectively, enter into with their customers ("Retail and Lease Accommodations").

B.  In the ordinary course of its business, Dealer enters into motor vehicle retail installment sale and lease contracts with its customers and wants GMAC to provide Dealer with Retail and Lease Accommodations.

C.  GMAC is willing to provide Retail and Lease Accommodations to Dealer in accordance with the terms and conditions of this Master Agreement and the agreements and documents listed in the chart below, which are attached to this Master Agreement as Exhibits (individually and collectively "Retail and Lease Documents").

D.  Dealer has read and fully understands the Retail and Lease Documents, and for administrative convenience, wants to evidence its agreement to and acceptance of all terms and conditions of the Retail and Lease Documents by signing only this Master Agreement.

### III. Agreement

In consideration of the Recitals above, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, GMAC and Dealer agree as follows:

A.  Each of the following Retail and Lease Documents is incorporated by reference into this Master Agreement as though fully set forth in it:

|    | Title |
|----|-------|
| 1  | GMAC Retail Plan |
| 2. | Terms of Use - Internet Application |
| 3. | Terms of Use - RouteOne Credit Aggregation System |
| 4. | Joint Marketing Agreement |
| 5. | Consumer Personal Information Confidentiality, Security and Disposal Agreement |
| 6. | GMAC Lease Plan Dealer Agreement |
| 7. | Terms of Sale for GMAC Vehicles |

B.  Dealer's signature on this Master Agreement constitutes its signature on each of the Retail and Lease Documents, including in each signature block and any other part of any Retail and Lease Document that calls for Dealer's signature.

C.  By signing this Master Agreement, Dealer:

    1.  Agrees to and accepts all provisions, terms, and conditions of each of the Retail and Lease Documents, as evidenced in the Exhibits*

2.  Agrees that in connection with sales of fixed rate Flexible Finance Plan retail installment sale contracts to GMAC, Dealer will be paid finance income due on eligible contracts.  Dealer elects the option of being paid finance income partially upfront. This means Dealer will be paid a designated percentage (currently 75%) of Dealer's finance income the month the contract is purchased.  The unearned portion of the finance income is subject to chargeback if the contract is prepaid in full within 90 days from the date of contract. Upon prior written notice, GMAC may, at its discretion, increase or decrease the percentage of finance income paid upfront on future volume.

3.  Waives any right to disavow or otherwise challenge the validity or enforceability of any of the Retail and Lease Documents (in whole or in part) on the basis that such Retail and Lease Document does not contain the Dealer's signature, was not signed by an authorized signatory, or on any similar basis.

D.  For purposes of Dealer's Retail and Lease Accommodations

Dealer hereby appoints GMAC as its attorney in fact and grants GMAC a limited power of attorney to sign any of the Retail and Lease Documents on Dealer's behalf, as deemed necessary or appropriate by GMAC for enforcement of any of the Retail and Lease Documents or related legal rights ("GMAC Power of Attorney").

a.  This limited GMAC Power of Attorney continues until all of Dealer's obligations to GMAC have been fully and irrevocably paid.

b.  This GMAC Power of Attorney is in addition to, and does not supersede, any other power of attorney or authorization granted to GMAC under the Retail and Lease Documents or otherwise.

E.  For purposes of Dealer's Retail and Lease Accommodations with GMAC, Dealer authorizes GMAC to file financing statements, mark chattel paper, note liens on documents of title, and take any and all other actions necessary to perfect its security interest in Dealer's property, as granted under the Retail and Lease Documents or otherwise.

F.  Nothing in this Master Agreement or any Retail and Lease Document constitutes a commitment by GMAC to provide Retail and Lease Accommodations or any other loans or credit accommodations to Dealer.

1.  GMAC Retail and Lease Accommodations are expressly subject to the terms and conditions of the agreements under which they are extended.

2.  GMAC Retail and Lease Accommodations are discretionary in nature and are subject to modification, suspension, and termination at GMAC's election in its sole, absolute discretion.

G.  With respect to Dealer's Retail and Lease Accommodations with GMAC, Dealer may not assign this Master Agreement (or any portion thereof, including any of the Retail and Lease Documents) without GMAC's written consent, such consent not to be unreasonably withheld. Upon notice to Dealer, GMAC may assign this Master Agreement (or any portion thereof, including any of the Retail and Lease Documents) without Dealer's consent to any affiliate or subsidiary of GMAC or pursuant to a merger, reorganization, sale of all or substantially all of the assets of GMAC or sale of sufficient stock to constitute a change of control. This Master Agreement will be binding on the parties and their respective successors and permitted assigns. In the event of an assignment of all or part of this Master Agreement to an affiliate or subsidiary of GMAC pursuant to this Section G, (i) the performance and obligations that have been assigned to the affiliate or subsidiary are the exclusive responsibility of the entity to whom the performance and obligations were assigned and (ii) the affiliate or subsidiary has all of the rights and benefits of the assigning party (GMAC) under the Agreement. Any assignment in violation of this Section will be void.

H.  GMAC reserves the right to terminate this Master Agreement, or any individual Retail and Lease Document, at any time without prior notice. GMAC may terminate any Retail and Lease Document made

an Exhibit to this Agreement without terminating the entire Agreement and/or without terminating other Retail and Lease Documents.

I.   No agency, partnership, joint venture, employer-employee or franchisor-franchisee relationship is intended or created by this Agreement or any of the Retail and Lease Documents.

J.   Any notice to Dealer may be made by e-mail or fax. GMAC will address notices it faxes to Dealer to the fax number that Dealership provides GMAC on Dealer's user profile. The notice is deemed given 24 hours after a fax or e-mail is sent, unless GMAC is notified that the transmission was incomplete or the delivery otherwise failed. GMAC may also give notice by posting notice on any website related to the Retail and Lease Accommodations. Dealer consents, for the purposes of the Junk Fax Prevention Act of 2005 and any similar laws requiring consent, to receive faxes, including faxed advertisements, to any fax telephone numbers provided by Dealer. This consent remains in effect until Dealer cancels it in writing.

K.   GMAC may modify, add to, and/or delete any of the terms and conditions of this Master Agreement and/or any of the Retail and Lease Documents by an agreement signed by GMAC and Dealer, a GMAC dealer bulletin or letter, or any other reasonable notice to Dealer. The continued provision of Retail and Lease Accommodations after GMAC gives notice of revised terms and conditions is conditioned on Dealer's acceptance of the revised terms and conditions. Any request by Dealer for a Retail or Lease Accommodation after such notice signifies Dealership's agreement to be bound by the revised terms and conditions.

L.   GMAC may inspect from time to time Dealer's books and records, including the files of customers whose applications are submitted to GMAC or whose contracts or leases are assigned to GMAC or a GMAC affiliate. Dealer shall provide GMAC will such financial statements or other information that GMAC may reasonable require from time to time.

M.   Federal law and Michigan law apply to this Master Agreement, including any of the Retail and Lease Documents.

N.   IN NO EVENT IS GMAC LIABLE TO DEALER FOR LOST PROFITS OR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY TYPE OR NATURE WHATSOEVER, ARISING OUT OF OR IN CONNECTION WITH THIS MASTER AGREEMENT OR ANY OF THE RETAIL AND LEASE DOCUMENTS.

O.   This Master Agreement and the Retail and Lease Documents are effective as of ___5/7/10___.

**[signature page to GMAC MASTER RETAIL-LEASE AGREEMENT]**

**DEALER**                                    By: **GMAC**

Signature:, _____

By(print): _Jennifer C. Bettano_  _Al Diaz_

Title: _Vice President_  _S/T_

Exhibit 1

## GMAC RETAIL PLAN

This Agreement between GMAC and Dealer, sets out the basic terms under which retail installment contracts between Dealer and retail buyer ("Contracts") may be purchased by GMAC from Dealer and the rights and obligations of Dealer and GMAC with regard to those Contracts.

I.   **Sale and Purchase of Contracts**

GMAC may purchase Contracts offered by Dealer if acceptable to GMAC at a buy rate established from time to time by GMAC.   Any excess of the finance charge stated in the Contract over the GMAC buy ("Difference") shall be governed by the following:

A    On Contracts assigned with recourse ("Recourse Transactions"), Dealer unconditionally guarantees payment on demand of the unpaid balance of the Contract and all losses and expenses incurred by GMAC in the event of a default in payment of any installment that results in repossession of the vehicle, except as otherwise provided by the terms of this Agreement.   GMAC will retain from the Difference and credit to a Dealer account with GMAC an amount designated by GMAC, constituting a percentage of the unpaid balance on Contracts.   The remainder of the Difference will be paid to Dealer by GMAC.   The Dealer account will secure all obligations of Dealer to GMAC and will be reduced by: (a) the amount of Dealer's proportionate share of any prepayment rebate and (b) any other obligations of Dealer to GMAC. Periodically, GMAC will pay Dealer the amount of credits in the Dealer account which are in excess of a percentage designated by GMAC of the total unpaid balances outstanding on Contracts.   GMAC reserves the right to suspend such payments or require Dealer to increase the amount of credits in such account if GMAC deems such action necessary to protect its interests.

B    On Contracts assigned without recourse ("Non-Recourse Transactions"), Dealer has no payment obligations to GMAC in the event of default in payment by Buyer under a Contract, except such obligations as may be imposed by operation of Section IV below.   On Contracts assigned with limited recourse ("Limited Recourse Transactions"), Dealer unconditionally guarantees payment on demand of the unpaid balance of the Contract up to the amount agreed upon between Dealer and GMAC, except as modified by operation of Section IV below.   On Non-Recourse Transactions and Limited Recourse Transactions, GMAC will credit the Difference to a Dealer account, which will secure all obligations of Dealer to GMAC.   Monthly, the amount so credited will be paid to Dealer, less (a) the Dealer's proportionate share of any prepayment rebate and (b) any other obligations of Dealer to GMAC.   If in any month the credits in the Dealer account are insufficient to cover (a) and (b) above, the shortage will be promptly paid by Dealer.

C    On any individual contract that is delivered with a rate that is below the applicable buy rate, Dealer will compensate GMAC for the difference between the buy rate and the contract rate ("Dealer Subvention"). GMAC will charge the Dealer's reserve account (Accounts Payable, Dealer) for the Dealer Subvention. GMAC will record such adjustment on the Statement of Dealer Finance Income.   Dealer Subvention adjustments are rebatable in the event the transaction is paid in full before maturity.

Dealer represents and warrants that the cash price stated in the retail installment sale contract will accurately reflect the price the buyer would pay if he/she were to buy for cash.   Dealer will not directly or indirectly cause or allow Dealer Subvention to be charged or passed along to any individual credit customer in contravention of applicable law, which, among other things, may prohibit motor vehicle dealers from charging customers for such amounts unless disclosed as a finance charge.   Dealer will treat the expense paid to GMAC for subvention as other dealership overhead expenses, and will not charge it solely to credit customers.

Dealer recognizes and understands that to advertise or promote a retail financing rate that reflects Dealer Subvention, applicable law may require a disclosure that the Dealer Subvention may affect the consumer price.   In any event, Dealer will not use GMAC's name or permit the implication that the rate being offered is that of GMAC.

Exhibit 1

**II      Perfection of Security Interest in Vehicles Covered by Contracts**

Unless required by local law, it is not necessary for Dealer to file or record Contracts or other documents to perfect the security interest in a vehicle sold pursuant to a Contract, as this responsibility will be assumed by GMAC. However, it is Dealer's responsibility to complete the necessary forms and documents at the time of sale and forward them together with the appropriate fees to those public officials who are responsible for issuing the certificate of title or registration.

**III     Insurance**

A     Unless prohibited by law, there must be physical damage insurance acceptable to GMAC covering the vehicle referred to in a Contract against fire, theft and collision. However, collision coverage is not required on vehicles having an unpaid cash price balance less than $2000, or such other amount as may be established from time to time by GMAC.

B     If complete and accurate information about insurance is furnished to GMAC at the time GMAC purchases the Contract, GMAC will assume responsibility for the Buyer's compliance with insurance requirements thereafter. If complete and accurate information about insurance is not furnished to GMAC at the time GMAC purchases the Contract, Dealer will be responsible for any loss that would have been covered by required insurance. However, GMAC will assume responsibility for any uninsured losses occurring after twelve (12) months from the date of the Contract.

C     On Recourse Transactions involving repossessed vehicles with insurable damage, GMAC will adjust any unpaid balance due from Dealer after repossession by the amount of one collision deductible and/or one comprehensive deductible not to exceed maximum deductible amounts established from time to time by GMAC. In each case, damage on a single loss must exceed the deductible. In the case of a vehicle not covered by collision insurance because the unpaid cash price balance was less than $2000 or such other amount as GMAC shall establish from time to time, GMAC's adjustment will be limited to the lesser of the cost of repair, or the unpaid balance reduced by the salvage value of the vehicle.

**IV     Dealer Warranties, Representations and Indemnification**

With respect to any Contracts, Dealer warrants and represents: (1) The Contract arose from the sale of the property described on the face of the Contract; (2) Dealer had title to the property at the time of sale free of any liens, except liens in favor of GMAC or the manufacturer of the vehicle; (3) All disclosures required by any directive, legislative enactment, order, ordinance, regulation, rule or other binding restriction of or by any governmental body (collectively referred to as "Laws") were properly made to the Buyer prior to the Buyer signing the Contract; (4) The advertisement, solicitation and sale of the property described on the face of the Contract and any related aftermarket product complied with all Laws; (5) All insurance documentation will be delivered to the Buyer within the time required by all Laws; (6) To the best of Dealer's knowledge, the Customer's Statement submitted is accurate; (7) The downpayment received by Dealer is exactly as stated; (8) The Contract is enforceable according to its terms, and all fees, charges, and other amounts provided for in the Contract comply with all Laws; (9) The execution of the Contract complied with all Laws; and (10) Dealer is licensed as required by all Laws.

Each of these warranties and representations is material to GMAC's acceptance of the Contract. If any of them is breached or is erroneous, Dealer unconditionally promises to accept assignment of the Contract and to pay GMAC, upon demand, the full amount of the unpaid balance under the Contract. Dealer also agrees to indemnify GMAC to the full extent of all losses or expenses incurred by GMAC as a result of such breach or error.

Dealer shall be liable for, and indemnify GMAC from, all actions, claims, suits, penalties, fines, judgements, settlements and legal expenses relating to any express or implied warranties to the Vehicle therewith.

Dealer agrees to indemnify GMAC for any judicial set-off or loss suffered as a result of a claim or defense of Buyer against Dealer.

If a Contract is rescinded, declared unenforceable, or voided by a court or an arbitrator, Dealer shall pay GMAC the full amount GMAC paid for the contract.

Exhibit 1

Dealer shall be liable even if a waiver, compromise, settlement or variation of the terms of the Contract releases the Buyer.

If Dealer breaches this Agreement, Dealer shall pay GMAC all losses and expenses incurred by GMAC as a result of such breach. In addition, Dealer shall indemnify GMAC for any losses incurred by GMAC because of any judicial set-off or recovery suffered because of any claim or defense asserted against GMAC as a result of any act or omission on the part of Dealer.

GMAC may charge the Dealer's reserve account to satisfy any obligation of the Dealer to GMAC.

V       **Aftermarket Products**

Aftermarket products, such as optional insurance, maintenance, service, or other contracts, are eligible for financing if the product, administrator, and product agreement forms have been approved by GMAC.

Dealer agrees on prepayment, repossession, or total loss, the unearned charges will be refunded to the customer or to GMAC, as appropriate. In the case of prepayment, unless applicable law requires GMAC to process such refunds, this is accomplished either by notifying the customer to make application to Dealer for the refund, or by Dealer authorizing GMAC to make the refund on Dealer's behalf.

If the Dealer authorizes GMAC to make the refund, when there is a repossession or total loss, or in those jurisdictions where applicable law requires GMAC to process such refunds, the unearned charges will be charged to the Dealer's reserve account (Accounts Payable Dealer) and GMAC will record the adjustment on the Statement of Dealer Finance Income.

If a Contract includes a charge for extended warranty protection or for a service contract offered by or through Dealer, Dealer agrees to purchase the Contract from GMAC upon demand for the amount of the unpaid balance of the Contract if a claim or defense is asserted under the warranty or service contract and Dealer is not able to resolve the dispute with the Buyer within ninety (90) days of the oldest unpaid installment.

VI.     **Repossession, Redemption and Disposition**

A.      Recourse Transactions -- In the event a default by the Buyer results in repossession, Dealer shall pay GMAC the unpaid balance (less applicable adjustments) if the vehicle is returned to Dealer within ninety (90) days or such other period as the Dealer and GMAC may agree after the Buyer's default in payment of the oldest unpaid installment, provided, however, that (i) this time period will not be applicable if Dealer is in breach of this Agreement or the Contract covering the vehicle at the time of repossession; and provided further that (ii) the running of this time period will be suspended in the event legal proceedings or arbitration, or confiscation or impoundment of the vehicle temporarily preclude GMAC from repossessing or returning the vehicle.

With respect to all repossessions returned to Dealer after the date of this Agreement, regardless of when the Contract covering that vehicle was purchased by GMAC, Dealer shall dispose of the vehicle and account to the Buyer in accordance with the following (to the extent permitted under applicable law):

1       The Buyer has by law the right to redeem the vehicle at any time before the vehicle has been disposed of or a contract is entered into for its disposition.

2       Following repossession, GMAC will send a notice informing the Buyer of the right to redeem, the amount necessary to redeem as of the date of the notice, and the date before which the vehicle may not be disposed of. A copy of this notice will be sent to Dealer. Dealer must permit the Buyer to redeem the vehicle in accordance with this notice, except in the limited circumstances set forth in the Repossession Accounting Procedures in the General Motors Dealers Standard Accounting System Manual ("Repossession Accounting Procedures"). Only such expenses as are allowable under the Repossession Accounting Procedures shall be included in computing the amount Buyer must pay to redeem the vehicle.

3       If the Buyer fails to redeem the vehicle by the date before which the vehicle may not be disposed of, the Contract will be assigned to Dealer without recourse against GMAC. Dealer shall pay GMAC the amount due within fifteen (15) days of the date of GMAC's request for payment or immediately upon disposition of the vehicle, whichever occurs first. If payment is not received by GMAC within

Exhibit 1

the fifteen (15) day period, GMAC may assess a charge thereafter at a rate established from time to time by GMAC.

4   Unless the Buyer redeems the vehicle, Dealer shall (i) dispose of it and (ii) account to the Buyer, in accordance with the Repossession Accounting Procedures, which set forth the procedure for determining whether a surplus exists.   Dealer is responsible for determining if a surplus or deficiency results from the disposition of the vehicle and in doing so may deduct only allowable expenses and other items defined in the Repossession Accounting Procedures.

5   If there are available funds as calculated under the Repossession Accounting Procedures, Dealer shall pay GMAC its allowable expenses and allowances out of the proceeds of disposition.

6   Dealer is responsible for paying the Buyer any surplus resulting from the disposition of the vehicle and Dealer must pay the surplus and account to the Buyer within a reasonable period of time of disposition.

7   If a deficiency results which is legally collectible and Dealer elects to attempt collection, Dealer must provide the Buyer with an accounting of the disposition in accordance with the Repossession Accounting Procedures.

8   If all or a portion of a deficiency is collected, Dealer shall pay GMAC such portion of the net amount collected as the amount of GMAC's allowable expenses and allowances bears to the total deficiency.

B   Non-Recourse Transactions and Limited Recourse Transactions – Except as provided herein or as otherwise agreed, Dealer will have no responsibility for a Buyer default or disposition of a repossessed vehicle.

VII   Termination

GMAC or Dealer may terminate this Agreement upon written notice to the other party, effective immediately. The termination of this Agreement shall not release GMAC or Dealer from any obligations incurred with regard to Contracts that are subject to this Agreement or any other agreement.

VIII   Miscellaneous

A   Dealer Not Made Agent or Representative of GMAC – This Agreement does not make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.   Neither party owes the other any fiduciary obligation.

B   Dealer's participation in the GMAC Retail Plan is at Dealer's sole election and GMAC and Dealer acknowledge that Dealer is free to secure either wholesale or retail financing from the financial institution of Dealer's choice.

IX   Other Agreements

This agreement cancels and supersedes any and all previous Retail Plan agreements executed between GMAC and Dealer.   The terms of this Agreement may be modified and supplemented by agreements simultaneously or subsequently entered into between GMAC and Dealer relating to the retail financing of motor vehicles.

No modification of the terms of this Agreement shall be binding upon Dealer or GMAC unless it is in writing and is signed by authorized representatives of Dealer and GMAC or the Master Retail-Lease Agreement between Dealer and GMAC permits such modification.   Dealer waives notice of acceptance of any guarantee in this Agreement and notices of non-payment and non-performance.

Exhibit 2

## TERMS OF USE – INTERNET APPLICATION

This Agreement is between Dealer and GMAC. It governs the terms and conditions of a dealer's use of any web site maintained by GMAC that permits eligible dealers to transmit application and other transaction information to GMAC and participating GMAC affiliates in connection with transactions submitted to GMAC for consideration under a GMAC Retail Plan Agreement, or GMAC Lease Plan Agreement, in effect between the dealer and GMAC, as modified from time to time ("Retail Plan Agreements") (the "Service").

1.  **Dealer Eligibility.**  The Service is available only to licensed motor vehicle dealers in good standing with GMAC in connection with transactions submitted to GMAC for consideration pursuant to the Retail Plan Agreements. Dealer will not allow any retail customer to access, use, or otherwise attempt to use the Service.  GMAC reserves the right, in its sole discretion, to deny access to anyone who fails to meet these requirements or violates this Agreement.

2.  **Dealer System Requirements.**  To access the Service, Dealer must meet the hardware, software, and communication requirements specified by GMAC for use of the Service.  GMAC may change these requirements from time to time without prior notice.  Dealer is solely responsible for all costs associated with obtaining, maintaining, and updating hardware, software, and communications equipment necessary to access the system.

3.  **Technical Support.**  GMAC will provide technical support directly related to the use of the Service or the related websites. GMAC reserves the right, in its sole discretion and at any time without notice, to modify the Service, the related websites, or the technical support provided with respect to the Service and related websites.

4.  **Proprietary Rights.**  GMAC retains full ownership of the Service, the related websites, and any trade marks, service marks, or patented business processes contained therein ("GMAC Intellectual Property").  Dealer acknowledges that applicable copyright and other proprietary rights and laws protect GMAC Intellectual Property.  Except as expressly authorized by GMAC, Dealer will not sell, license, rent, modify, distribute, reproduce, transmit, publicly display, publish, adapt or create derivative works from GMAC Intellectual Property.

5.  **System Integrity.**  Dealer may not use any device, software, unauthorized human intervention or routine to interfere or attempt to interfere with the proper working of the Service or the related websites. Dealer may not take any action that imposes an unreasonable or disproportionately large workload on the Service, the related websites or GMAC's infrastructure.  GMAC may immediately suspend Dealer's use of the Service without notice to avoid any such interference with the proper working of the Service or the related websites, or an unreasonable or disproportionately large workload on the Service.

6.  **Passwords and Security.**  Dealer may not improperly use, disclose to, or share with any third parties Dealer's password for use of the Service. Dealer is entirely responsible for maintaining the confidentiality of Dealer's password and for requesting any changes to Dealer's password necessary to protect confidentiality or otherwise prevent unauthorized use.  Dealer is entirely responsible for any and all activities that occur using Dealer's password, whether authorized or unauthorized.  Dealer will notify GMAC immediately of any unauthorized disclosure or use of Dealer's password or any other breach of security. Dealer indemnifies and holds GMAC harmless for any loss GMAC or Dealer suffers because of Dealer's failure to safeguard the confidentiality of Dealer's password or otherwise prevent unauthorized use of the Service.  Dealer acknowledges that any use of the Service with Dealer's password, after notice under section 12 of this agreement of revised terms and conditions governing Dealer's use of the service will bind the Dealer to the revised terms and conditions.

7.  **Service Interruptions.**  GMAC is not responsible for interruption of the Service.

8.  **NO WARRANTY.**  GMAC PROVIDES THE SERVICE, THE RELATED WEBSITES, AND ANY TECHNICAL SUPPORT "AS IS" AND WITHOUT ANY WARRANTY OR CONDITION, EXPRESS OR IMPLIED.  GMAC SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.

Exhibit 2

9. **LIMIT OF LIABILITY.** IN NO EVENT IS GMAC LIABLE TO DEALER FOR LOST PROFITS OR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY TYPE OR NATURE WHATSOEVER, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

10. <u>Dealer Record-keeping and Applicant Disclosures</u>.  For each transaction submitted to GMAC for consideration under a Retail Plan Agreement, Dealer will obtain the applicants signatures on an application form approved by GMAC that accurately reflects the application information submitted to GMAC in the transaction.  Dealer will retain, on its own behalf and on GMAC's behalf, such application forms and any other records or information related to such applications in compliance with applicable state and federal law, including without limitation, the Federal Equal Credit Opportunity Act and similar state statutes, and in compliance with retention requirements established by GMAC from time to time in its discretion.  Upon request, Dealer will promptly provide GMAC a copy of the signed application form, and any other records or information related to such application that Dealer retains on GMAC's behalf. Dealer will provide applicants any disclosures that the law requires to accompany an application and a copy of the completed application if the law or GMAC requires it.

11. **Privacy Notice.** For each transaction submitted to GMAC for consideration under a Retail Plan Agreement, before obtaining the applicants' signatures on the credit application, if requested by GMAC, Dealer will give the applicants a copy of the written GMAC Privacy Notice in the form approved by GMAC and ensure that any election by the applicants regarding information sharing pursuant to the applicable GMAC Privacy Notice is accurately recorded on the application form that the Dealer obtains and retains under Section 10 of this agreement. In addition, Dealer will ensure that such election recorded on this application form is properly communicated to GMAC through the means provided for by the Service.

Exhibit 3

<u>Terms Of Use – RouteOne Credit Aggregation System</u>

This Agreement is between Dealer and GMAC. It governs the terms and conditions on which GMAC is willing to accept application and other transaction information transmitted through the system operated by RouteOne (the "Service"). Dealer wishes to use the Service to transmit application and other transaction information ("Application Information") related to retail purchase and lease transactions ("Retail Transactions") that Dealer asks GMAC to consider for possible purchase by GMAC under a GMAC Retail Plan Agreement, GMAC Lease Plan Agreement, GMAC Bank Retail Plan Agreement, GMAC Bank Lease Plan Dealer Agreement or other similar agreement, in effect between Dealer and GMAC, as modified from time to time ("GMAC Retail Plan").

1.  <u>Dealer's use of the Service</u>.  Dealer acknowledges and agrees that: (1) GMAC is not responsible for the Service, notwithstanding GMAC's role as host of the web site through which Dealer may access the Service ("GMAC Access Website"); (2) Dealer's rights and remedies regarding the Service are limited to those provided by Dealer's arrangements with RouteOne; and (3) Dealer is solely responsible for any fees or charges charged to Dealer by RouteOne or others in conjunction with Dealer's use of the Service or the GMAC Access Website.

2.  <u>Dealer Eligibility</u>.  GMAC will allow Dealer access to the GMAC Access Website and accept Application Information through the Service only if Dealer is properly licensed and in good standing with GMAC.  If Dealer fails to meet these requirements or violates this Agreement or any other agreement with GMAC, GMAC reserves the right, in its sole discretion, to refuse to accept Application Information through the Service from Dealer and to block access to the GMAC Access Website.

3.  <u>GMAC Access Website</u>.

    a)  <u>Dealer System Requirements</u>:  To access the GMAC Access Website, Dealer must meet the hardware, software, and communication requirements specified by GMAC for use of the GMAC Access Website. GMAC may change these requirements from time to time without prior notice.  Dealer is solely responsible for all costs associated with obtaining, maintaining, and updating hardware, software, and communications equipment necessary for such access.

    b)  <u>Technical Support</u>: GMAC will provide technical support directly related to the use of the GMAC Access Website.  GMAC reserves the right, in its sole discretion and at any time without notice, to modify the GMAC Access Website, the related websites, or the technical support provided with respect to the GMAC Access Website and related websites.

    c)  <u>Proprietary Rights</u>:  GMAC retains full ownership of the GMAC Access Website, the related websites, and any trademarks, GMAC Access Website marks, or patented business processes contained therein ("GMAC Intellectual Property").  Dealer acknowledges that applicable copyright and other proprietary rights and laws protect GMAC Intellectual Property.  Except as expressly authorized by GMAC, Dealer will not sell, license, rent, modify, distribute, reproduce, transmit, publicly display, publish, adapt or create derivative works from GMAC Intellectual Property.

    d)  <u>System Integrity</u>.  Dealer may not use any device, software, unauthorized human intervention or routine to interfere or attempt to interfere with the proper working of the GMAC Access Website or the related websites.  Dealer may not take any action that imposes an unreasonable or disproportionately large workload on the GMAC Access Website, the related websites or GMAC's infrastructure.  GMAC may immediately suspend Dealer's use of the GMAC Access Website without notice to avoid any such interference with the proper working of the GMAC Access Website or the related websites, or an unreasonable or disproportionately large workload on the GMAC Access Website.

    e)  <u>Links</u>. As a convenience for Dealer, GMAC Access Website may contain links to other Internet sites that are owned and operated by third parties.  By offering you these links, GMAC is not endorsing any of the other sites and GMAC has no responsibility for the content of third party sites.  Dealer accesses linked sites at Dealer's own risk.

Exhibit 3

f)   **NO WARRANTY.** GMAC PROVIDES THE GMAC ACCESS WEBSITE, THE RELATED WEBSITES, AND ANY TECHNICAL SUPPORT "AS IS" AND WITHOUT ANY WARRANTY OR CONDITION, EXPRESS OR IMPLIED. GMAC SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.

4.   **Passwords.** Dealer may not improperly use, disclose to, or share with any third parties any password issued to Dealer by GMAC or RouteOne that is required to use the GMAC Access Website or the Service. Dealer is entirely responsible for any and all activities that occur using Dealer's password(s) for either the GMAC Access Website or the Service, whether authorized or unauthorized. Dealer will notify GMAC immediately of any unauthorized disclosure or use of Dealer password(s) or any other breach of security involving GMAC. Dealer indemnifies and holds GMAC harmless for any loss GMAC or Dealer suffers because of Dealer's failure to prevent unauthorized use of the GMAC Access Website or the Service.

5.   **Service Interruptions.** GMAC is not responsible for any interruption in the operation of the GMAC Access Website or the Service.

6.   **Dealer Record-keeping.** For each Retail Transaction submitted to GMAC under a GMAC Retail Plan, Dealer will obtain the applicants' signatures on an application form approved by GMAC. Dealer will ensure that such application forms accurately reflect the Application Information submitted to GMAC in the related Retail Transactions. Dealer will retain, on its own behalf and on GMAC's behalf, such application forms, any other records or information related to such application, and records of applicants' information sharing elections (see below) in compliance with applicable state and federal laws, including without limitation, the Federal Equal Credit Opportunity Act and similar state statutes, and in compliance with retention requirements established by GMAC from time to time in its discretion. Upon request, Dealer will promptly provide GMAC a copy of the signed application form, and any other records or information related to such application that Dealer retains on GMAC's behalf.

7.   **Applicant Disclosures.** Before submitting Application Information to GMAC under a GMAC Retail Plan, Dealer will provide the following notice to all applicants in the related Retail Transaction:

"Your application will be submitted to GMAC, GMAC Bank, [GMAC Automotive Bank (Corp.), if New Mexico], and (if this is a lease transaction) C.O.L. Trust, both at P.O. Box 33414, Detroit, MI 48232, so that they may decide whether or not to purchase the transaction."

In addition, Dealer will provide applicants any disclosures that the law requires to accompany an application and a copy of the completed application if the law or GMAC requires it.

8.   **GMAC Use of Pre-submission Information.** GMAC may access some or all Application Information through the GMAC Access Website whether or not Dealer submits the related Retail Transaction to GMAC under a GMAC Retail Plan ("Pre-submission Information").

Dealer and GMAC have previously entered into a Joint Marketing Agreement under which Dealer and GMAC seek to jointly promote, market and endorse GMAC's acquisition and servicing of certain Retail Transactions from Dealer under a GMAC Retail Plan under brand names identified with GMAC. To further the objectives of this joint marketing arrangement, Dealer agrees that GMAC may use Pre-submission Information to assist the Dealer in marketing or promoting products or services related to Retail Transactions that Dealer could submit to GMAC under a GMAC Retail Plan.

Dealer also agrees that GMAC may use Pre-submission Information to perform services for Dealer or as otherwise permitted by applicable law.

GMAC agrees to use Pre-submission Information only as applicable law permits.

Exhibit 3

9.  **Privacy Notice**.  For each Retail Transaction submitted to GMAC under a GMAC Retail Plan, before obtaining the applicants' signature on the related credit application, if requested by GMAC, Dealer will (1) give the applicants a copy of the written GMAC Privacy Notice in the form approved by GMAC and (2) accurately and properly record any election by the applicants regarding information sharing pursuant to the applicable GMAC Privacy Notice as instructed by either RouteOne or GMAC.  Dealer will retain documentation of the applicants' information sharing elections along with the application form pursuant to Section 7 of this Agreement.

10. **Confidentiality**.  Some Pre-submission Information may be nonpublic personal information as defined in 16 C.F.R. Part 313 ("Non-public Personal Information").  GMAC agrees not to disclose or use Non-public Personal Information except (1) to assist the Dealer in marketing and promoting products or services related to Retail Transactions that Dealer could submit to GMAC under a GMAC Retail Plan, (2) to perform services for Dealer, or (3) as otherwise permitted under an exception in 16 C.F.R. §§ 313.14 or 313.15 or otherwise permitted by law.

11. **Security**.  GMAC will employ commercially reasonable technical and organizational precautions to ensure that Non-public Personal Information is protected from unauthorized access, alteration, disclosure, erasure, manipulation, and destruction by third parties while Non-public Personal Information is in the possession or under the control of GMAC and ensure that Non-public Personal Information is not processed in other ways contradictory to applicable privacy and/or data protection laws.

    GMAC will provide Dealer with all information Dealer reasonably requests regarding the processing of Non-public Personal Information, including, but not limited to, where and how Non-public Personal Information is stored, who has access to Non-public Personal Information and why, and what security measures are taken to ensure that Non-public Personal Information is protected from unauthorized access, alteration, disclosure, erasure, manipulation, and destruction while in the possession or under the control of GMAC.

12. **Limits on Applicability of Sections 10 and 11**.  Dealer acknowledges that the restrictions imposed on GMAC in Sections 10 and 11 of this Agreement do not apply to Application Information related to Retail Transactions that Dealer submits to GMAC under a GMAC Retail Plan even if some or all of the information was previously Pre-submission Information subject to these sections.  Dealer acknowledges that GMAC may use Application Information related to Retail Transactions submitted to GMAC under a GMAC Retail Plan in any manner the law permits.

13. **Agreement Modifications**.  GMAC may modify these terms and conditions by agreement signed by GMAC and Dealer, GMAC dealer bulletin or letter, or other reasonable notice.  Dealer's continued use of the GMAC Access Website or the Service after GMAC gives notice of revised terms and conditions is conditioned on Dealer's acceptance of the revised terms and conditions.  Any use by Dealer of the GMAC Access Website or the Service after such notice signifies Dealer's agreement to be bound by the revised terms and conditions.

14. **Retail Plan Agreements**.  Dealer's submission of Retail Transactions to GMAC under a GMAC Retail Plan remains subject to all of the terms and conditions set forth in the plan agreements.

Exhibit 4

## JOINT MARKETING AGREEMENT

This Joint Marketing Agreement is between GMAC and the Dealer.

Whereas, Dealer originates motor vehicle retail installment sale contracts and leases with consumers and may seek to assign them to GMAC;

Whereas, GMAC does not enter into motor vehicle retail installment sale contracts and leases directly with consumers, but instead seeks to acquire such contracts and leases from dealers and then service those contracts and leases under brand names identified with GMAC;

Whereas, Dealer and GMAC both market, promote, and endorse GMAC financing and leasing;

Now, therefore, Dealer and GMAC enter into this Joint Marketing Agreement.

1. From time to time, GMAC may disclose to Dealer, for use in marketing and promoting retail installment sale contracts or leases that Dealer may seek to assign to GMAC, nonpublic personal information as defined in 16 C.F.R. Part 313 ("Information"). GMAC's disclosures to Dealer pursuant to this Agreement may include, but not necessarily be limited to, Information that pertains to consumers whom GMAC has preapproved for GMAC financing or leasing, and Information that pertains to current or recent customers of GMAC, such as their status as GMAC customers. In consideration of receipt of Information, Dealer agrees not to disclose or use the Information except (1) as necessary to market, promote, or endorse GMAC financing or leasing, or (2) under an exception in 16 C.F.R. §§ 313.14 or 313.15 in the ordinary course of business to carry out the marketing, promotion, or endorsement of GMAC financing or leasing. This provision does not apply to disclosures that GMAC makes to Dealer with the consent of or at the direction of the affected consumers, or to Dealer's disclosure and use of Information as the law otherwise permits.

2. This Agreement does not obligate GMAC to disclose any Information to Dealer. Disclosure of Information to Dealer is at GMAC's sole discretion. If Dealer breaches this Agreement, GMAC will end disclosures of Information to Dealer.

3. Dealer acknowledges that GMAC may own or license various names, trademarks, service marks, copyrights, and other intellectual property ("Marks") that are used in connection with motor vehicle retail installment sale contracts or leases. GMAC grants Dealer a non-exclusive, non-transferable right to display the Marks in the form and manner approved by GMAC, and only in that form and manner, in connection with Dealer's marketing, advertising, and promotional activities related to the procurement of retail installment sale contracts and leases pursuant to this Agreement. Dealer may not use the Marks as part of the Dealer name or as part of an internet domain name (i.e., URL). Upon termination or expiration of this Agreement, Dealer will immediately cease all use of the Marks and thereafter, will not use, either directly or indirectly, any Marks or any other confusingly similar marks in a manner that GMAC determines is likely to cause confusion or mistake or deceive the public. Dealer will reimburse GMAC for all legal fees and other expenses incurred in connection with any action to require Dealer to comply with this Agreement. This Agreement does not grant Dealer any right or license to sell, or otherwise distribute for sale, any promotional, advertising, or novelty items bearing the Marks.

4. This Agreement does not make either party the agent or legal representative of the other for any purpose. Nor does it grant either party any authority to assume or create any obligation on behalf of or in the name of the other. Each party is responsible for ensuring the legal compliance of its own advertising.

Exhibit 5

## CONSUMER PERSONAL INFORMATION CONFIDENTIALITY, SECURITY, AND DISPOSAL AGREEMENT

This agreement between GMAC and the Dealer pertains to consumer information ("Consumer Information"), as defined in regulations of the Federal Trade Commission and the Federal Deposit Insurance Corporation that govern the privacy, confidentiality, security and disposal of consumer information, that is furnished to it by GMAC, including information furnished by GMAC affiliates or service providers on behalf of GMAC, or that Dealer obtained through its provision of services to GMAC, regardless of whether such information is in paper, electronic, digital, or other form.

Confidentiality
Dealer will treat Consumer Information as confidential and will not disclose or use Consumer Information other than as necessary to carry out the purposes for which GMAC furnished Consumer Information to Dealer. Dealer will limit access to Consumer Information to only those people who need to know Consumer Information to perform their functions pursuant to Dealer's agreements with GMAC.
This confidentiality provision does not apply to any information that (a) is publicly available by other than a breach of this agreement, (b) is disclosed to Dealer by a third party, other than a GMAC affiliate or service provider, that Dealer reasonably believes is legally entitled to disclose such information, (c) was known by Dealer before the earlier of its receipt (i) from GMAC or (ii) from a GMAC affiliate or service provider, (d) is developed by Dealer independently of any disclosures of such information that GMAC or a GMAC affiliate or service provider previously made to Dealer, (e) is disclosed with GMAC's prior written consent, or (f) is required to be disclosed by law, provided that before such disclosure by Dealer, Dealer gives GMAC reasonable notice and an opportunity to object to disclosure.

Security
Dealer will take all necessary technical and organizational precautions to ensure that Consumer Information is protected from unauthorized access, alteration, disclosure, erasure, manipulation, and destruction by third parties while Consumer Information is in the possession or under the control of Dealer and ensure that Consumer Information is not processed in other ways contradictory to privacy and/or data protection laws.
Upon written request, Dealer will provide GMAC with all information that GMAC reasonably requests regarding the processing of Consumer Information, including, but not limited to, where and how Consumer Information is stored, who has access to Consumer Information and why, and what security measures are taken to ensure that Consumer Information is protected from unauthorized access, alteration, disclosure, erasure, manipulation, and destruction while in the possession or under the control of Dealer.
Dealer will maintain sufficient procedures to detect and respond to security breaches involving Consumer Information.  Dealer will inform GMAC as soon as practicable when Dealer suspects or learns of malicious activity or any other security breach involving Consumer Information and take corrective action. Dealer will provide GMAC with such information regarding the malicious activity or breach as GMAC reasonably requests.

Disposal
Upon the earlier of GMAC's request, completion of the work in connection with which GMAC disclosed Consumer Information, or upon the cessation of the services or termination of services, Dealer will return Consumer Information to GMAC or destroy it as instructed by GMAC.
If GMAC directs Dealer to destroy the records and files containing Consumer Information, all such paper records will be shredded and all such electronic or digital records and files will be erased or otherwise rendered unreadable, in a way that prevents the records and files from being practically read or reconstructed.  Dealer will promptly confirm to GMAC the destruction of said records and files.
Upon request, Dealer will provide GMAC all information that GMAC reasonably requests regarding the disposal of records and files containing Consumer Information, including but not limited to such portions of the Dealer's information security policies and procedures as Dealer can provide without compromising the security of Consumer Information.
Dealer will cause its employees, agents, and representatives to comply with the provisions of this agreement.
Dealer accepts GMAC's right to terminate Dealer's services immediately without notice and with no indemnity by GMAC if Dealer is found in violation of this agreement or privacy or data protection laws.

Exhibit 6

## GMAC LEASE PLAN DEALER AGREEMENT

This Agreement between GMAC and Dealer, sets out the terms under which closed-end lease agreements ("Leases") between a lessee ("Lessee") and Dealer, and the vehicles described therein ("Vehicles"), may be purchased by GMAC from Dealer.  This Agreement also sets out the rights and obligations of Dealer and GMAC with regard to those Leases and Vehicles.

I.   **Sale and Purchase of Leases and Vehicles**
     GMAC may purchase Leases and Vehicles offered by Dealer if acceptable to GMAC.  The Leases must be for eligible Vehicles as defined below.  Maintenance leases are not eligible for purchase.

     A. **Eligible Vehicles:**  Eligible Vehicles are new passenger cars and light trucks up to 15,000 pounds GVW that are listed in the Residual Value Lease Guide approved by GMAC and such used vehicles as GMAC may designate.  Vehicles that will be sub-leased, rented, or used for hire or as public conveyances are not eligible.

     B. **Insurance:**  Unless otherwise approved by GMAC, Vehicles must be covered by (1) public liability insurance with minimum limits that GMAC will establish from time to time, and (2) physical damage coverage with deductibles not to exceed amounts that GMAC will establish from time to time.  Such coverages must be maintained for the term of the Lease through a carrier acceptable to GMAC.  Appropriate evidence of such coverages must be provided to GMAC.  The policy of public liability insurance must show GMAC as an additional insured.  The policy of physical damage insurance must show GMAC as loss payee.

     Dealer must furnish GMAC with complete and accurate information about insurance when GMAC purchases the Lease and Vehicle.  GMAC will assume responsibility for the Lessee's compliance with insurance requirements thereafter.

     If complete and accurate information about physical damage insurance is not furnished to GMAC at the time GMAC purchases the Lease and Vehicle, Dealer will be responsible for any loss that would have been covered by required insurance.  However, GMAC will assume responsibility for any uninsured losses occurring after twelve (12) months from the date of the Lease.

     C. **Lease Pricing:**  Dealer agrees that Leases will be priced using the residual value factor for the make and model of the Vehicle (including options) listed in the Residual Value Lease Guide approved by GMAC and in effect at the time.  GMAC may modify such factors from time to time, in which case Leases shall be priced using the modified factor.

     D. **Purchase Price:**  The price for eligible Leases and Vehicles GMAC purchases shall not exceed such limit as GMAC may from time to time establish, plus compensation for Dealer-installed options acceptable to GMAC.  The price for such options shall not exceed limits that GMAC may establish from time to time.

II.  **Registration and Titling**
     Dealer agrees to register and title Vehicles in GMAC's name or as instructed by GMAC, as required by applicable law.  Dealer shall complete the necessary forms and documents at the time of Lease signing and forward them, together with the appropriate fees, to the public officials who are responsible for issuing the certificate of title or registration.

III. **Dealer Warranties, Representations and Indemnification**
     With respect to any Leases, Dealer warrants and represents:  (1) The Lease arose from the lease of the property described on the face of the Lease; (2) Dealer has the right to convey title to the Vehicle at the time of lease free of any liens or encumbrances; (3) All disclosures required by any directive, legislative enactment, order, ordinance, regulation, rule or other binding restriction of or by any governmental body (collectively referred to as "Laws") were properly made to the Lessee before the Lessee signed the Lease; (4) All documentation related to insurance sold or provided by Dealer will be delivered to the Lessee within any time required by all Laws; (5) To the best of Dealer's knowledge, the application submitted is accurate; (6) The cash capitalized

Exhibit 6

cost reduction received by Dealer is  exactly as stated; (7) The Lease is enforceable according to its terms; (8) The execution of the Lease complied with all Laws; and (9) Dealer is licensed as required by all Laws.

Each of these warranties and representations is material to GMAC's acceptance of the Lease and Vehicle.  If any of them is breached or is erroneous, Dealer unconditionally promises to accept assignment of the Lease and Vehicle and to pay GMAC, upon demand, the full amount unpaid under the Lease (adjusted for unearned lease charges) plus the original estimate of the Vehicle's value at the scheduled end of the Lease as stated in the Lease.  Dealer also agrees to indemnify GMAC to the full extent of all losses or expenses incurred by GMAC as a result of such breach or error.

If a Lease is rescinded, declared unenforceable, or voided by a court or an arbitrator as a result of any act or omission of Dealer, Dealer shall pay GMAC the full amount GMAC paid for the Lease and Vehicle.

If Dealer breaches this Agreement, Dealer shall pay GMAC all losses and expenses incurred by GMAC because of such breach.  In addition, Dealer shall indemnify GMAC for any losses or expenses incurred by GMAC because of any judicial set-off or recovery suffered because of any claim or defense asserted against GMAC as a result of any act or omission on the part of Dealer, or because of any claim or defense of a Lessee against Dealer.

Any liability of Dealer to GMAC pursuant to this Agreement shall not be reduced even if a waiver, compromise, settlement, or variation of the terms of the Lease releases the Lessee.

**IV.  Aftermarket Products**

Aftermarket products, such as optional insurance, maintenance, service, or other contracts, are eligible for financing if the product, administrator, and product agreement form have been approved by GMAC.

Dealer agrees on prepayment, repossession, or total loss the unearned charges will be refunded to the customer or to GMAC, as appropriate.  In the case of prepayment, this is accomplished either by GMAC notifying the customer to make application to Dealer for the refund, or by Dealer authorizing GMAC to make the refund.

If the Dealer authorizes GMAC to make the refund, when there is a repossession or total loss, or in those jurisdictions where the law requires lien holder processing of refunds, the unearned charges will be charged to the Dealer's reserve account (Accounts Payable Dealer) and GMAC will record the adjustment on the Statement of Dealer Finance Income.

If a Lease includes a charge for extended warranty protection or for a service contract offered by or through Dealer, Dealer agrees to purchase the Lease and Vehicle from GMAC upon demand for the full amount unpaid under the Lease (adjusted for unearned lease charges), plus the original estimate of the Vehicle's value at the scheduled end of the Lease as stated in the Lease, if a claim or defense is asserted under the warranty or service contract and Dealer is not able to resolve the dispute with the Lessee within ninety (90) days of the oldest unpaid monthly payment.

**V.  End of Lease Processing**

**A.**  If the Vehicle is not purchased by either the Lessee or Dealer, Dealer agrees to follow GMAC's instructions with respect to (1) receiving and inspecting the Vehicle returned from Lease, (2) completing a vehicle condition report, supplied by GMAC, in the presence of the Lessee and (3) obtaining the Lessee's signature on the report acknowledging the condition of the Vehicle.  If the Dealer-prepared vehicle condition report does not disclose excessive wear and use or excess mileage that a reasonable inspection would have discovered, Dealer shall be responsible for the first $250 of such excessive wear and use or excess mileage.

Dealer will, at GMAC's option, provide GMAC safe storage of returned Vehicles at no charge for a period not to exceed 30 days.  Dealer is not required to provide primary insurance coverage on stored Vehicles. If, however, a Vehicle is damaged while in the possession of Dealer, Dealer is required to document the facts relating to the damage.  If an employee of Dealer is responsible for the damage, Dealer is required to file a claim under Dealer's garage-keeper's legal liability insurance policy.

Exhibit 6

B.  In the event a Lessee under a Lease assigned to GMAC desires to exercise the option to purchase, GMAC may, in its discretion, assign all right, title, and interest in the Lease and the vehicle described therein to Dealer,  As consideration for assignments that Dealer accepts, Dealer shall pay GMAC the Option Price less any dealer income increment that GMAC may have included in the Option Price.

## VI.  Termination

GMAC or Dealer may terminate this Agreement upon written notice to the other party, effective immediately. The termination of this Agreement shall not release GMAC or Dealer from any obligations incurred with regard to Leases or Vehicles that are subject to this Agreement or any other Agreement.

## VII.  Miscellaneous

A.  Dealer is Not Made Agent or Representative of GMAC -- This Agreement does not make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.  Neither party owes the other any fiduciary obligation.

B.  Dealer's participation in the GMAC Lease Plan is at Dealer's sole election, and GMAC and Dealer acknowledge that Dealer is free to engage in leasing transactions with the financial institution of Dealer's choice.

Exhibit 7

## TERMS OF SALE FOR GMAC VEHICLES

This Agreement between GMAC and Dealer sets out the terms and conditions under which GMAC Vehicles (as defined below) may be purchased by Dealer.

### I. Recitals

1. From time to time, Dealer may be in possession of vehicles owned by GMAC including those that have been surrendered to Dealer by lessees upon scheduled maturity or early termination of a lease with GMAC, and those that have been purchased by GMAC from buyers under the provisions of their balloon payment retail installment sale contracts (collectively referred to as "GMAC Vehicles," and singularly as "GMAC Vehicle").

2. From time to time, Dealer may desire to purchase and GMAC may desire to sell certain GMAC Vehicles subject to the terms and conditions set forth in this Agreement.

3. In arranging these sales, generally, GMAC will quote Dealer a purchase price for a GMAC Vehicle upon Dealer's request, and Dealer will give an indication of its willingness to purchase the GMAC Vehicle at the quoted price (the "Proposed Agreement"). Both GMAC and Dealer recognize that because of the informality of the discussions leading to the Proposed Agreement there will often be uncertainty regarding the other party's intentions regarding the consummation of the Proposed Agreement. Thus, the parties agree that neither party should be bound to the Proposed Agreement until the time set forth below, notwithstanding any expressions of agreement or acceptance by either party that might occur prior to that time.

### II. Agreement

In consideration of the recitals, and of the agreements contained herein, and of other good and valuable consideration the receipt of which is hereby acknowledged, the Dealer and GMAC agree as follows:

1. **All Sales Subject to this Agreement:**

   All sales of GMAC Vehicles to Dealer are subject to the terms and conditions set forth in this Agreement other than sales of GMAC Vehicles to Dealer through an auction, such as GMAC's SmartAuction. Only the identity of the particular GMAC Vehicle to be sold (the "Subject Vehicle") and its price will vary in individual transactions.

2. **Definitions:**

   2.1. "Dealer's Payment" as used in this agreement shall mean the receipt by GMAC of customary forms of payment as GMAC agrees to accept, and notification of the vehicle identification number of the Subject Vehicle for which payment is being made. At GMAC's discretion, payment may include offset or floorplan financing by GMAC. Upon demand by GMAC, Dealer shall make all payments in immediately available funds, cash, certified check, bank check, or as otherwise specified by GMAC, notwithstanding GMAC's prior acceptance of other forms of payment.

   2.2. "GMAC's Acceptance" as used in this Agreement shall mean the first of the following to occur: (i) Passage of 5 business days from GMAC's receipt of Dealer's Payment without GMAC notifying Dealer of its objection to the amount or form of Dealer's Payment or its intent to reject the Proposed Agreement; or (ii) GMAC's providing Dealer with title documentation necessary to transfer the Subject Vehicle's certificate of title to Dealer; or (iii) GMAC's providing other written confirmation that it accepts the Proposed Agreement.

3. **Time of Effectiveness:**

   Both GMAC and Dealer will be bound to the Proposed Agreement as soon as both Dealer's Payment and GMAC's Acceptance have occurred ("Time of Effectiveness"). All of GMAC's right, title, ownership and interest in the Subject Vehicle will transfer to Dealer at the Time of Effectiveness along with any risk of loss that remained with GMAC prior to that time.

Exhibit 7

4. **Rights and Obligations of Parties Prior to Time of Effectiveness:**

Prior to the Time of Effectiveness, either party may reject or modify the Proposed Agreement without liability. Until the Time of Effectiveness, GMAC shall retain all of its rights as owner of the Subject Vehicle, including without limitation, the right to demand or take possession of the Subject Vehicle, or to sell it to any other person. If GMAC demands or takes possession of the Subject Vehicle, or gives notice to Dealer that the vehicle is to be sold to another person, Dealer shall be deemed to have reasonable notice from GMAC that the Proposed Agreement has been rejected.

Dealer shall have no legal or equitable claim to or interest in any GMAC Vehicle, including the Subject Vehicle prior to the Time of Effectiveness. Dealer's possession of GMAC Vehicles, including its possession of the Subject Vehicle prior to the Time of Effectiveness, will be as voluntary bailee on behalf of GMAC. Dealer shall not grant, sell, encumber or otherwise transfer any interest in any GMAC Vehicle, including the Subject Vehicle prior to the Time of Effectiveness.

5. **Storage of GMAC Vehicles; Losses Arising from Dealer's Possession of GMAC Vehicles:**

Dealer will, at GMAC's option, provide GMAC safe storage of GMAC Vehicles at no charge for a period not to exceed 30 days.

Dealer is not required to provide primary insurance coverage on stored GMAC Vehicles. If, however, any GMAC vehicle is damaged while in the possession of Dealer, Dealer is required to document the facts relating to the damage.

If an employee of Dealer is responsible for the damage, Dealer is required to file a claim under Dealer's garage-keeper's legal liability insurance policy.

Dealer will be liable to GMAC for any uninsured loss suffered by GMAC related to any use or improper storage of a GMAC Vehicle by Dealer, its employees or its customers, including without limitation, losses due to fire, theft, vandalism, mischief, collision, acts of God, property damage, personal injury, public liability or the like. Dealer will indemnify GMAC for any such losses.

6. **Presumption of Resale Responsibility for Taxes:**

All purchases of GMAC Vehicles by Dealer are presumed to be for resale in the regular course of Dealer's business unless Dealer provides advance written notice to GMAC of a different purpose.

If a GMAC Vehicle is purchased for other than resale, Dealer shall be liable for any sales, use or similar taxes and for any related penalties or interest. Dealer shall also be responsible for remitting such amounts directly to the applicable taxing authority.

7. **No Express or Implied Warranties:**

**GMAC MAKES NO WARRANTIES OR REPRESENTATIONS ABOUT THE PERFORMANCE ABILITY OF ANY GMAC VEHICLES ABOUT THEIR STATE OF REPAIR, ABOUT THEIR CONDITION, MAINTENANCE OR REPAIR HISTORY OR ABOUT THEIR ABILITY TO FUNCTION IN ANY RESPECT.**

**FURTHER, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE SALE OF ANY GMAC VEHICLES.**

**ALL GMAC VEHICLES WILL BE SOLD ON AN "AS IS" BASIS. DEALER ASSUMES THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF ANY GMAC VEHICLES IT PURCHASES FROM GMAC. IF ANY GMAC VEHICLE PURCHASED PROVES DEFECTIVE, DEALER, NOT GMAC, SHALL ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING OR REPAIR AND LIABILITY FOR ANY OTHER LOSS DEALER MAY SUSTAIN AS A RESULT.**

8. **No Reliance on GMAC Representations:**

Dealer acknowledges that GMAC will generally not have an opportunity to inspect the vehicle's condition prior to sale, and that any statements or representations made by GMAC regarding GMAC Vehicles will be

Exhibit 7

without the benefit of such an inspection. Dealer further acknowledges that it will have opportunity to conduct a thorough inspection of the GMAC Vehicle in its possession. Thus, Dealer will not rely upon or be induced to purchase any GMAC Vehicle by statements or representations made by GMAC with respect to a particular vehicle's performance ability, state of repair, condition, maintenance, repair history or ability to function in any respect.

9.   **Entire Agreement. Modifications of Agreement:**

This Agreement represents the entire agreement of GMAC and Dealer regarding the terms and conditions under which GMAC Vehicles may be sold to Dealer.   The terms and conditions set forth herein may not be waived, modified, amended or supplemented except by written agreement signed by both GMAC and Dealer.

Notwithstanding the above paragraph, SmartAuction[SM] transactions will also be subject to the SmartAuction[SM] Terms Of Use as they appear on the GMAC SmartAuction[SM] web site service on the date of the transaction. Conflicts between this Agreement and the SmartAuction[SM] Terms Of Use will be resolved in favor of the SmartAuction[SM] Terms Of Use.

10.   **Severability:**

The parties intend that this Agreement comply with the law in all respects. Any provision of this Agreement that may be prohibited by law or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

11.   **Termination:**

Dealer or GMAC may terminate this Agreement upon written notice to the other party, effective immediately. The termination of this Agreement shall not release GMAC or Dealer from any obligations incurred with regard to sales of GMAC Vehicles made prior to the termination.