# UNITED STATES DISTRICT COURT
## MIDDLE DISTIRICT OF FLORIDA
### TAMPA DIVISION

JOSEPH AGOSTINO,

      Plaintiff,

v.                                Case No.: 8:18-cv-1202-T-36TGW

ALLY FINANCIAL INC.,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS ACTION

COMES NOW, Plaintiff JOSEPH AGOSTINO ("Plaintiff"), by and through his undersigned counsel, pursuant to Local Rule 3.01(b), and hereby files this Response In Opposition to Defendant's Renewed Motion to Compel Arbitration and Dismiss Action, stating the following in support thereof:

### I.     Factual Background / Procedural History.

Plaintiff commenced this action against Defendant by filing his Complaint on May 18, 2018, alleging therein that Defendant engaged in debt collection activity, directed at Plaintiff, in violation of two consumer protection statutes – namely, the Florida Consumer Collection Practices Act, Fla. Stat. § 559, et seq. ("FCCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). *See*, DE 1, generally. On June 25, 2018, Defendant filed its first Motion to Compel Arbitration and Dismiss Action (the "First Motion"). *See*, DE 12. After substantial briefing,[1] the Court issued an Order denying Defendant's First Motion Without Prejudice. *See,* DE

---

[1] Plaintiff's filed a Response in Opposition to Defendant's First Motion, Defendant then filed a Reply, and Plaintiff thereafter filed a Sur-Reply. *See,* DE 13, 19 and 23.

27. In denying Defendant's First Motion, the Court noted that Defendant did "not include an affidavit or declaration in support of its Motion, nor does it file a copy of the agreement referenced in the assignment." *Id.* at p. 6. The Court also found that "[t]he RISC is not in an admissible form because no person authenticates it or establishes it as Ally's business record or otherwise meets an exception to the hearsay rule." *Id.* at p. 7. As such, the Court held that Defendant had "not met its burden to provide competent evidence upon which this Court can rely to find that either an agreement to arbitrate exists, or that Ally is an assignee entitled to enforce the arbitration agreement." *Id.* at p. 7.

On December 7, 2018, Defendant filed a renewed Motion to Compel Arbitration and Dismiss Action (the "Renewed Motion"). *See,* DE 28. With the exception of a Declaration from Leandrian Wright (DE 28-1), Defendant's Renewed Motion is essentially identical to its First Motion. *Compare,* DE 12 with DE 28. In her Declaration, Ms. Wright, an "employee and authorized representative" of Defendant, alleges that Plaintiff and a non-party, Bill Currie Ford Inc. ("Seller"), entered into a Retail Installment Contract ("RISC") containing an arbitration clause. Ms. Wright further alleges that the RISC was then assigned to Defendant subject to the terms of an agreement between Seller and GMAC, Inc. *See,* DE 28-1 at ¶¶ 5 – 10. Ms. Wright states that GMAC Inc. was "rebranded" in 2010, and the company name was changed to Ally Financial Inc. *Id.* at ¶ 8.

Ms. Wright claims to have knowledge of these facts "by virtue of [her] position for [Defendant], [her] familiarity with the company's practices and procedures, and based upon [her] review of the relevant business records and other documents of Ally[.]" *Id.* at p. ¶ 3. Notably, Ms. Wright's Declaration does not address the claims at issue in this case or Defendant's collection activities directed at Plaintiff. *Id.* Ms. Wright does not claim to have any knowledge with respect

to the Seller's business practices or records, and absolutely no evidence of the latter has been newly proffered, or is otherwise to be found in the evidentiary record before the Court. *Id.*

The arbitration clause found in the RISC provides that "**EITHER YOU OR WE**" may elect arbitration. *See,* DE 28-1 at p. 7 (emphasis in original). "You" is defined as the buyer and co-buyer, and "We" is defined as the Seller-Creditor – Bill Currie Ford. *Id.* at p. 6. The RISC does not provide that anyone other than the buyer or seller may elect arbitration. *Id.* Defendant is not a party to the RISC. *Id.*

The agreement between Seller and GMAC Inc., entitled "GMAC MASTER RETAIL-LEASE AGREEMENT", provides that "GMAC is willing to provide Retail Lease Accommodations to [Seller] in accordance with the terms and conditions of this Master Agreement and the agreements and documents listed in the chart below, which are attached to this Master Agreement as Exhibits." *See,* DE 28-1 at p. 9. The "chart below" lists seven separate agreements, one of which is entitled "GMAC Retail Plan". *Id.* The GMAC Retail Plan, while barely legible, appears to "set out the basic terms under which retail installment contracts may be purchased by GMAC from [Seller] and the rights and obligations of [Seller] and GMAC with regard to those Contracts." *Id.* at p. 12. The Retail Plan mentions <u>nothing</u> about arbitration, or the right to elect arbitration. *Id.*[2] Instead, the Retail Plan provides:

> Dealer Not Made Agent or Representative of GMAC – This Agreement does not make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or create any obligation on behalf of or in the name of the other. Neither party owes the other any fiduciary obligation.

*Id.* at p. 15.

---

[2] In fact, the word "arbitration" does not appear anywhere in the GMAC Master Retail-Lease Agreement or in any of the seven agreements incorporated therein.

For the reasons that follow, Defendant's Renewed Motion must be denied as Defendant: 1) fails to establish that a valid agreement to arbitrate exists, or that Defendant is an assignee thereof; 2) fails to establish that Defendant possesses the right to compel Plaintiff to arbitrate, and 3) fails to demonstrate that the claims at issue in this case are subject to arbitration. That being the case, Defendant's Renewed Motion must be denied.

## II.    Legal Standard.

The Eleventh Circuit Court of Appeals has repeatedly held that "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016)(quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 144 (2014)); *see also, Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 301, 130 S.Ct. 2847, 2858–59, 177 L.Ed.2d 567 (2010)(directing courts to "apply[ ] the presumption of arbitrability only" to "a validly formed and enforceable arbitration agreement").

The threshold question of whether an arbitration agreement exists at all is "simply a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Absent such an agreement, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). The Eleventh Circuit utilizes the summary judgment standard in resolving the issue of whether parties agreed to arbitrate a dispute. *See Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed.Appx. 782, 785-86 (11th Cir. 2008)(applying summary judgment analysis to whether an agreement to arbitrate exists); *Garcia v. Mason Contract Products, LLC.*, 2009 WL 1851131at *3, n.1 (S.D. Fla. June 29, 2009)("Application of [the summary judgment] standard to the issue

presented herein is appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.")

### III. Arguments.

#### a. Defendant has Failed to Supply the Court with Competent Evidence that an Arbitration Agreement Exists, or that any such an Agreement was Assigned to Defendant.

"[T]he Eleventh Circuit found courts should apply a Rule 56 summary judgment standard in evaluating motions to compel arbitration[.]" *See, Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013)(citing *Magnolia,* 272 Fed.Appx. at 785–86 (11th Cir.2008)). It is well settled that, when ruling on issues under the Rule 56 summary judgment standard, the Court may not consider unauthenticated documents, unsworn statements or the unsubstantiated representations of counsel. *See, e.g., Roger Kennedy Constr., Inc.. v. Amerisure Ins., Co.*, 506 F.Supp.2d 1185, 1192 (M.D. Fla. 2007)("Counsel for both parties have filed multiple documents in support of their summary judgment motion which the Court cannot consider because they are not properly authenticated …."); *Saunders v. Emory Healthcare, Inc.,* 360 Fed. Appx. 110, 113 (11th Cir.2010) (*per curiam* ) (citation omitted) (stating that "[t]o be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence"); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 (11th Cir. 2003), *as amended* (Sept. 29, 2003) ("Unsworn statements 'do[ ] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion."); *McCulley v. Allstates Tech. Services*, 2005 WL 1475314, at *10 (S.D. Ala. June 21, 2005) ("Of course, unsupported representations of counsel are not

evidence that may be considered on a motion for summary judgment."); *Elbel v. Royale Energy Co.*, 1991 WL 214303, at *1 (S.D. Fla. July 9, 1991)(Zloch, J.)("The Court notes that in ruling on the aforementioned Motions For Summary Judgment, it has considered only those matters permitted by Rule 56(c), Fed.R.Civ.P., and not arguments, proffers or representations by counsel of record").

In its Order Denying Defendant's First Motion, the Court held that Defendant failed to meet it burden to provide competent evidence that an agreement to arbitrate exists, or that Defendant is an assignee entitled to enforce any such agreement. *See,* DE 26 at p. 7. In an attempt to overcome this deficiency, Defendant offers the Wright Declaration. Because Defendant has again failed to meet its evidentiary burden, the Renewed Motion must be denied. *See, e.g., Matute v. Main St. Acq. Corp.,* 11-CV-62375, 2012 WL 4513420 (S.D. Fla. Oct. 2, 2012); *Webb v. Midland Credit Mgt., Inc.*, 11 C 5111, 2012 WL 2022013 (N.D. Ill. May 31, 2012).

In *Matute,* the District Court for the Southern District of Florida denied an alleged assignee's motion to compel arbitration under strikingly similar circumstances. *Id.*, 2012 WL 4513420. Specifically, the defendant in *Matute* attempted to force the plaintiff to arbitrate his FCCPA and FDCPA[3] claims on grounds that it was the assignee of the original creditor's rights under an agreement which contained an arbitration provision. *Id.* at *1–2. To support its position, the defendant "attached the alleged Cardmember Agreement between Plaintiff and" the original creditor, and submitted the declaration of its vice president claiming the account was assigned to Defendant. *Id.* at *2. In denying the Defendant's Motion, Judge Williams noted that Defendant had failed to supply any sales documentation for the subject account or any evidence from the

---

[3] The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). The FCCPA is "a Florida state analogue to the federal FDCPA." Oppenheim v. I.C. System, Inc., 627 F.3d 833, 836 (11th Cir. 2010).

original creditor establishing that the account records were kept in the ordinary course of business.

*Id.* at *3. As the Court explained:

> Defendant provides no documentation or evidence besides the declaration of Mr. Loynd, Vice President of Main Street, to prove that Defendant Main Street does in fact own the account; is an assignee of Direct Merchants; and is entitled to enforce the Cardmember Agreement and Arbitration Provision. […] Defendant has presented no sales documentation regarding Plaintiff's account to Main Street or any sales or acquisition information tracing the sale of Direct Merchants to HSBC. Moreover, Defendant has not presented any evidence from the third parties (Direct Merchants or HSBC) that the records regarding Plaintiff's account were kept in the regular course of business. Thus, the Court finds that Main Street has not presented sufficient evidence to demonstrate that it is entitled to enforce the Arbitration Provision by standing in Direct Merchants' shoes or to demonstrate that it is entitled under the law to enforce the provision as a third party. There is no evidence thus far that Main Street rightfully has a claim to Plaintiff's account in any capacity.

*Id.* at *2 – 3.

In reaching its decision in *Matute*, Judge Williams relied upon the decision in *Webb* which, once again, involved similar facts. In *Webb*, the plaintiff brought suit under the FDCPA and the defendants moved to compel arbitration arguing that "as an assignee, [it] stands in the shoes of [] the original assignor, and may enforce the arbitration provision contained in the card agreement" with the plaintiff. *Id.*, 2012 WL 2022013 at *1. In support of the purported assignment, the defendants relied upon the declaration of one defendant's employee and a card agreement. *Id.* *1 – 3. In finding the evidence supplied by the defendants deficient, the Court noted that the documents purporting to demonstrate the assignment were not created by the defendants and, as such, were not "***made*** and kept by defendants in the course of their regularly conducted business activity." *Id.* at *3 (emphasis added). "Rather, these exhibits are signed by third party entities, and

two of the documents […] are undated, calling into question when exactly they were made." *Id.* In

denying the defendants' motion, the Court explained:

> [T]o admit the third party documents attached as Exhibits A through
> F to Minford's declaration as business records, defendants must
> demonstrate that the third party author created such documents on a
> regular basis and kept the document at issue in the course of its
> regularly conducted business activity. *See Cunningham Charter
> Corp.*, 2012 WL 1565532, at *3. Defendants must satisfy these
> foundational requirements through the testimony of a qualified
> witness with knowledge of the process by which the third party
> created the document, thereby demonstrating that the document is
> trustworthy. *See id*. A review of Minford's declaration demonstrates
> that defendants have failed to lay the requisite foundation for
> admission of Exhibits A through F. Minford does not claim to be
> knowledgeable in the record keeping procedures of any of the non-
> defendant entities. […] Based on this record, it is clear that Minford
> lacks personal knowledge of the procedure used to create and
> maintain Exhibits A through F, and he is not capable of testifying as
> a qualified witness under Rule 902(11). *See Reese*, 666 F.3d at 1017.
> The court therefore declines to admit Exhibits A through F as
> records of regularly conducted business activity, and will not
> consider them in ruling on defendants' motion.

*Id.* at *4 – 5; *see also, Henggeler v. Brumbaugh & Quandahl, P.C., et al.*, 894 F.Supp.2d 1180,
1187 (D. Neb. 2002)(motion to compel arbitration denied where, in addition to failing to show that
a valid agreement to arbitrate existed, the movant seeking to compel arbitration had "not shown
that it has a valid assignment of the purported debt, if valid, from [the original creditor].")[4]

In the instant case, as in *Matute* and *Webb*, Defendant fails to supply the Court with any

sales documentation (receipt, bill of sale, or the like) demonstrating that the RISC was sold to

Defendant as alleged. The "Retail Plan" proffered by Defendant establishes only that there was an

agreement for the potential purchase and sale of contracts between the Seller and GMAC, not that

any contracts were in fact purchased by, or sold to, Defendant.[5] Like *Matute* and *Webb*, because

---

[4] In *Henggeler*, the court also stated that "[o]ther courts have noted that 'the possibility of a debt collector attempting
to collect a debt that it does not actually own, either through assignment or otherwise, is very real.'" *Id.*, 894 F. Supp.2d
at 1188 (internal citations omitted).

[5] Indeed, the RISC specifically contemplates the possibility of there being *no* such transactions with Defendant. In
that regard, the RISC explicitly references possible assignments with multiple financial institutions. *See,* DE 28-1 at
p. 7 ("Seller's Right to Cancel […] You agree that if Seller is unable to assign this contract within this time period to

Defendant's declarant has no knowledge of the business practices of the Seller, the record is devoid of evidence from the maker of the RISC and purported assignor sufficient to qualify the document as business record exempt from the hearsay rule.[6] Finally, as in *Matute*, there is no indication as to when, or by whom, the RISC was allegedly assigned to Defendant, or any evidence demonstrating that the agreement between the Seller and GMAC was ratified by the Seller subsequent to the "rebranding" of GMAC. As the record is devoid of evidence sufficient to meet Defendant's evidentiary burden to establish the existence of a binding arbitration agreement between Plaintiff and Defendant, Defendant's Motion must be denied. *See, e.g.*, *Macuba v. Deboer*, 193 F.3d 1316, 1325 (11th Cir. 1999)(district court erred in considering hearsay testimony in ruling on motion for summary judgment); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)(Holding that a summary judgment-like standard is appropriate when considering a motion to compel arbitration).[7]

### b.  Defendant Does Not Possess the Right to Compel Plaintiff to Arbitrate.

As detailed *supra*, the RISC in question provides that "**EITHER YOU OR WE**" may elect arbitration. *See,* DE 28-1 at p. 7 (emphasis in original). "You" is defined as the buyer and co-buyer, and "We" is defined as the Seller-Creditor – Bill Currie Ford. *Id.* at p. 6. Nothing in the RISC permits anyone other than the Buyer or Seller to elect arbitration. *Id.* The Declaration proffered by Defendant alleges that the RISC in question was assigned to Defendant subject to Defendant's

---

any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract."

[6] The Court previously rejected Defendant's "self-authenticating" argument. *See,* DE 27 at p. 7.

[7] Ms. Wright's Declaration erroneously states, under oath, that "Mr. Agostino has never disputed the assignment of the Contract from Seller to [Defendant]." *See,* DE 28-1 at p. 4. As the record well demonstrates, and the Court itself noted in its Order denying Defendant's First Motion (DE 27 at p. 6), Plaintiff has maintained since the inception of this case that Defendant is not an assignee entitled to enforce arbitration rights.

agreement(s) with the Seller. *Id.* While alluding to multiple agreements between itself and Seller, "Exhibit B" is the only agreement upon which Defendant would have the Court rely. Notably, however, this agreement with the Seller ("Exhibit B"), and any other agreements incorporated therein, clearly does not provide for the transfer of arbitration rights and, in fact, expressly prohibits Defendant from acting on the Seller's behalf. *Id.* at p. 15 ("This Agreement does not make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or create any obligation on behalf of or in the name of the other"). As the evidence proffered by Defendant fails to establish that Defendant was transferred the Seller's right to elect arbitration (in fact, it establishes just the opposite), Defendant cannot compel arbitration under the RISC as a matter of law. *See, e.g., WILLIAM LESTER, Pl., v. PORTFOLIO RECOVERY ASSOCIATES, LLC, Def..*, 1:18-CV-0267-VEH, 2018 WL 3374107, at *1 (N.D. Ala. July 11, 2018); *Garcia v. Midland Funding, LLC*, CV 15-6119-(RBK/KMW), 2017 WL 1807563, at *3 (D.N.J. May 5, 2017), *appeal dismissed*, 17-2104, 2017 WL 5664865 (3d Cir. Oct. 13, 2017).

In *Lester*, the plaintiff brought a consumer protection action and the defendant-debt buyer moved to compel arbitration based upon a clause in the plaintiff's agreement with the original creditor. *Id.* at * 3. The defendant argued that its "purchase of the Account from [the original creditor] allows it to enforce the agreement, including the Arbitration Provision." *Id.* In analyzing whether the defendant "stands in the shoes" of the original creditor, the Court looked to the terms of the agreement between defendant and the creditor – a bill of sale – and a declaration by the creditor stating that the plaintiff's account had been sold to defendant. *Id.* at *2 – 4. The Court, noting that in the Eleventh Circuit when "addressing the underlying question of whether parties have a valid arbitration agreement, no presumption in favor of arbitration applies", found that the

defendant had failed to establish that it had been transferred the right to compel arbitration. As the

Court explained:

> At the end of the day, Koehler's declaration does not define "account," nor does it state that the intent of the parties was to convey to PRA all of Synchrony's rights and privileges under the credit agreement. The declaration also contradicts the Bill of Sale attached thereto, which purports to convey only "receivables." PRA has cited no evidence that the right to arbitrate was transferred, or that it was Synchrony's intent to transfer to PRA the right to arbitrate.

*Id.* at *7.

Similarly, in *Garcia v. Midland Funding, LLC*, the Court held that "even with a 'healthy

regard for the strong federal policy in favor of arbitration,' the Agreement [between an original

creditor and debt buyer] did not clearly convey the right to demand individual arbitration." *Id.*,

2017 WL 1807563, at *3. Instead, the Court held:

> Defendant received rights associated with the Receivables. Defendant acquired the right to collect the receivable, the right to bring an action to collect the receivable, etc., but the Agreement does not, on its face, convey the broad right to compel arbitration for "any dispute or claim" relating to Plaintiff's Account. The right to compel arbitration for Plaintiff's FDCPA claim is not associated with legally enforcing, filing suit, collecting, settling, or a similar action with respect to the receivable. Therefore, Defendant's motion to compel arbitration will be denied.

*Id.* (internal citations omitted).

Here, as in *Lester* and *Garcia*, the documents proffered by Defendant directly contradict

its claim that it was transferred the right to compel arbitration. Specifically, the "GMAC RETAIL

PLAN" which "sets out […] the rights and obligations of [Seller] and GMAC" contains nothing

evidencing the transfer, or intent to transfer, the right to compel arbitration under the RISC. *See,*

DE 28-1 at pp. 12 – 15. Instead, the agreement explicitly disclaims any agency relationship through

which one party could act on behalf of the other. *Id.* Moreover, absent from the record is anything

establishing that the agreement between the Seller and GMAC survived GMAC's rebranding or otherwise inures to Defendant's benefit. That being so, there is no evidence that Defendant was transferred the right to compel arbitration, or that it was the Seller's intent to do so. Because Defendant has failed to carry its burden to demonstrate it possesses the right to arbitrate, its Renewed Motion must be denied as a matter of law.

### c. As a Non-Party, With Insufficient Evidence of Assignment, Defendant Cannot Compel Arbitration as a Matter of Law.

Defendant does not, and cannot, assert that it is a party to the RISC. Because Defendant is not a party to the purported contract, and because Plaintiff's claims are entirety statutory in nature, there is no basis for the Court to compel arbitration in this case. *See, e.g., Drayton v. Toyota Motor Credit Corp.*, 686 Fed. Appx. 757 (11th Cir. 2017).

In *Drayton*, the plaintiff brought statutory claims under the TCPA and the FCCPA. *Id.* at *1. The defendant moved to compel arbitration, even though it was not a party to the arbitration agreement in question. *Id.* at *1. The District Court denied the motion and the defendant appealed. In affirming the District Court's denial of the motion to compel arbitration, the Eleventh Circuit explained:

> To decide "whether a non-party can enforce an arbitration clause against a party" we must look to "applicable state law," which in this case is Florida. *See Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011). Under Florida law, "a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration." *See Marcus v. Fla. Bagels, LLC*, 112 So.3d 631, 633 (Fla. Dist. Ct. App. 2013) (internal quotation marks omitted). An exception to this rule, equitable estoppel, provides that in certain situations, "fairness" dictates that a signatory should not be able to avoid arbitration with a nonsignatory. *See id.* at 634 (internal quotation marks omitted). "[T]he equitable estoppel doctrine has been found to apply when one party attempts to hold [another party] to the terms of [an] agreement while simultaneously trying to avoid the agreement's arbitration clause." *Id.* (internal quotation marks omitted).

> Toyota is not a party to the RBO, the only document containing an arbitration clause. Under Florida law, as non-signatory to the contract containing an arbitration clause, Toyota cannot compel arbitration. Furthermore, equitable estoppel is not appropriate for this case because Drayton is not seeking to hold Toyota to the terms of the RBO, or even the RISC for that matter. Accordingly, we affirm.

*Id., see also, Schreiber v. Ally Fin. Inc.*, 634 Fed. Appx. 263, 264 (11th Cir. 2015)(finding that Ally Financial, notably, the very same Defendant as in this case, was not entitled to compel arbitration as a non-party).

In the instant case, as in *Drayton*, it is undisputed that Defendant is not a party to the purported agreement to arbitrate. Moreover, Plaintiff is not seeking to hold Defendant to the terms of the purported agreement.[8] Accordingly, there is no basis herein to apply equitable estoppel. *See, e.g., Rahmany v. T-Mobile USA Inc.*, 717 Fed. Appx. 752, 753 (9th Cir. 2018)(Equitable estoppel inapplicable in TCPA case as plaintiff's "allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the" agreement in question"). Accordingly, the Court must deny Defendant's Motion.

### d.  Defendant Has Not Established that Plaintiff's Claims Are Subject to the Purported Arbitration Agreement.

As the party moving to compel arbitration, the burden is on Defendant to make a *prima facie* case showing the existence of an agreement to arbitrate. *In re W. Wiand,* 2011 WL 4532070, *4 n. 13 (M.D.Fla. June 8, 2011). More specifically, and as the United States Supreme Court has explained, "[t]he test for arbitrability remains whether the parties consented to arbitrate *the dispute in question*." *Granite Rock Co. v. Intl. Broth. of Teamsters*, 561 U.S. 287, 305 (2010)(emphasis added); *see also, Hanover Ins. Co. v. Atlantis Drywall & Framing LLC*, 611 Fed. Appx. 585, 588

---

[8] In fact, Plaintiff makes no reference whatsoever to the alleged agreement in his Complaint. *See,* DE 1.

(11th Cir. 2015)("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.")

In support of its Renewed Motion, Defendant represents that Plaintiff's claims arise out of "attempts to collect amounts due under the Contract" attached to its Motion and that the "calls to him [were] regarding payments due under the Contract after he defaulted on his payment obligations." *See,* DE 28 at pp. 5 and 12. However, Plaintiff's Complaint alleges only that the telephone calls at issue "were all made in an attempt to collect a financial obligation" consisting of an "amount allegedly owed for a consumer loan obtained primarily for personal, family and/or household purposes." *See,* DE 1 at ¶ 12. Obviously, these are distinct assertions, which could, but needn't necessarily equate. Defendant, without elaboration, nevertheless insists that they do. This premise conveniently allows Defendant to assume a conclusion, and then ask the Court to do likewise. This is a flawed stratagem which incorporates an artifice common to arguments based on illogical, circular reasoning. The Court should recognize it for what it is and reject it as such.

Put differently, despite ample opportunity to do so,[9] Defendant has supplied no evidence whatsoever that the collection activities at issue in this case arise out of the RISC. In that regard, Plaintiff stresses that the Declaration proffered by Defendant contains <u>nothing</u> concerning the genesis of Plaintiff's claims or Defendant's conduct as it relates thereto. In its Answer, Defendant has either denied, claimed ignorance of, or refused to respond to each and every substantive allegation in Plaintiff's Complaint. *See*, DE 10, generally. Because an agreement to arbitrate a dispute with respect to one account is insufficient to compel arbitration with respect to a dispute involving a separate account, Defendant has not satisfied its burden to demonstrate that a valid agreement to arbitrate the dispute at issue in this case exists. *See, e.g., Eugene W. Kelsey & Son,*

---

[9] Plaintiff first raised this argument on July 9, 2018 in his Response In Opposition to Defendant's First Motion (DE 13).

*Inc. v. Architectural Openings, Inc.*, 484 So. 2d 610, 611–12 (Fla. 5th Dist. App. 1986) ("Arbitration provisions from one contract cannot be extended to a separate contract between the same parties unless the parties expressly agree to do so."); *Lopez v. Atlas One Fin. Group LLC*, 27 So. 3d 164, 164 (Fla. 3d Dist. App. 2010)("Because the documents pertaining to the account at issue do not contain an arbitration clause and the arbitration clause relied on by Atlas One is contained in documents pertaining to a separate account and does not apply to Atlas One, we reverse"); *Paine, Webber, Jackson & Curtis v. Lucas,* 411 So.2d 1369 (Fla. 5th DCA 1982)(arbitration could not be based on an arbitration clause in a commodity account where the controversy arose from a separate cash fund account with no arbitration clause, even though both accounts involved the same client and brokerage firm).

### e. Even Accepting Defendant's Unsubstantiated Representations, Plaintiff's Claims are Not Subject to the Alleged Arbitration Provision.

Yet even assuming, in the absence of any evidence, that the collection efforts at issue in this case were made in an effort to collect upon an obligation arising out of the alleged agreement relied upon by Defendant, the consumer protection claims at issue are still not subject to arbitration. *See, e.g., Gamble v. New Eng. Auto Fin., Inc.*, 17-15343, 2018 WL 2446607 (11th Cir. May 31, 2018).

The Florida Supreme Court has long recognized that under both federal statutory provisions and Florida's arbitration code,[10] "the test for determining arbitrability of a particular claim under a broad arbitration provision is whether a 'significant relationship' exists between the claim and the agreement containing the arbitration clause." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636–38 (Fla. 1999). Such a significant relationship exists when there is a "contractual nexus"

---

[10] The RISC in question provides that "Federal Law and the law of the state of our address shown on the front of this contract apply to this contract." *See,* DE 28-1 at p. 7.

between the claim and the contract. *Id.* at 638. "A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Id.* Conversely, "a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public." *Id.* Indeed, a "relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties." *Id.* at 639. "[T]hat a dispute could not have arisen but for the agreement does not mean that the dispute necessarily 'relates to' that agreement." *Votzke v. Wells Fargo Bank, N.A.,* No. 8:14-cv-2200-T-27AEP, DE 11 at p. 3 (M.D. Fla. Dec. 16, 2014)(Whittemore, J.)(internal citations omitted).

In *Gamble*, a recent decision from the Eleventh Circuit Court of Appeals, the defendant-appellant moved to compel arbitration based upon the arbitration provision contained in the plaintiff's automobile loan agreement, which required arbitration of any "claim, dispute or controversy ... whether preexisting, present or future, that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement." *Id.* at *1. Thereafter, the defendant sent the plaintiff text messages, which the plaintiff alleged were sent in violation of the TCPA. *Id.* In affirming the District Court's denial of the defendant's motion to compel arbitration, the Eleventh Circuit found that the District Court had correctly held that the plaintiff "based her claims on rights created under the TCPA, not the Loan Agreement" and that her "TCPA claim does not arise from any right implicated by the Loan Agreement nor from the parties' contractual relationship." *Id.* at *2. The Appellate Court went on to explain that the TCPA claim "arises not

from the Loan Agreement or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law." *Id.*

The Eleventh Circuit has typically "focused on foreseeability as [being the] proper standard for resolving the scope of an arbitration clause that covers disputes 'arising out of or pursuant to' the contract between the parties." *Hemispherix Biopharma, Inc. v. Johannesburg Consol. Inv.*, 553 F.3d 1351, 1367 (11th Cir. 2008). The Eleventh Circuit has also determined that a claim relates to a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties." *Bahamas Sales Assoc., LLC v. Byers,* 701 F.3d 1335, 1340 (11th Cir. 2012). Again, the fact that a dispute could not have arisen but for an agreement does not mean that the dispute necessarily "relates to" that agreement. *Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.,* 533 F.3d 1342, 1347 (11th Cir. 2008). The phrase "related to" marks a boundary by indicating some direct relationship. *Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1218 (11th Cir. 2011). Requiring a direct relationship between the claim and the contract is necessary because, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere." *Id.*

The question this Court faces is not unlike analyzing a jury trial waiver in an underlying contract, or determining whether a cause of action for violating consumer protection laws is a compulsory counterclaim in an action on an underlying debt: each inquiry depends on context, factual and causal connections, and the degree to which the latter are inter-related, if at all. For example, undertaking such an analysis in cases alleging violations of the FCCPA, several Judges of this District recently found jury trial waivers in the plaintiffs' mortgages to be unenforceable and denied the defendants' motions to strike plaintiffs' jury trial demands. In *Jones v. Bank of America, N.A.*, the court found that while defendant provided supporting case law to enforce a jury

trial waiver, those cases failed to address the scope of the waiver, and that defendant "failed to present a cogent argument in favor of finding that the present consumer protection suit is subject to the jury trial waiver." *Id.*, 2012 WL 3065381, at *1 (M.D. Fla. July 27, 2012). Similarly, in *Dorn v. Bank of America, N.A.*, the court declined to enforce a jury trial waiver in a consumer protection action arising from unlawful debt collection practices when a jury waiver was contained in the underlying mortgage. Judge Merryday noted that "Bank of America never establishes how this action 'relates to' the mortgage. (In fact, what can 'in any way related to' even coherently mean? Bank of America offers no answer)." *Id.*, 8:12-cv 00510-SDM-TGW, M.D. Fla., DE 24 (July 23, 2012).

In *Votzke v. Wells Fargo Bank, N.A.,* Judge Whittemore held that:

> Plaintiff's FCCPA and TCPA claims do not arise out of the mortgage, in the sense that those claims do not originate or result from the mortgage. Rather, his claims arise from Wells Fargo's efforts to collect a debt that had been discharged in bankruptcy. […] Plaintiff's dispute with Well Fargo concerning the FCCPA and TCPA is not a direct result of the performance of a contractual duty, and therefore his claims do not relate to the mortgage.

*Id.*, No. 8:14-cv-2200-T-27AEP, DE 11 at pp. 2 – 3 (M.D. Fla. Dec. 16, 2014) (internal citations omitted).

Other courts, too, have held that a consumer's action alleging unlawful debt collection, and an action to collect the underlying debt, do not *arise out of* the same aggregate set of operative facts. *See, e.g., Whigum v. Heilig-Meyers Furniture Inc.*, 682 So. 2d 643 (Fla. 1st DCA 1996) (finding that an action to collect a consumer debt, and an action under a statute regulating consumer collection practices, were permissive counterclaims; they do not "*arise out of* the same aggregate set of operative facts . . . [as] the debtor's action under the statute is based on the commission of prohibited debt collection practices, and the creditor's action on the debt is based on the failure to pay for consumer goods sold on credit")(emphasis added); *In re Bateman*, Case No. 8:14-bk-

05369-RCT, DE 49 (Bankr. M.D. Fla. May 22, 2018)(Colton, J.)(finding the "lack of nexus apparent" and denying to compel arbitration as the plaintiff did "not argue that the debt collection [attempts]… violated the customer agreement.")

As settled law establishes that Plaintiff's claims do not arise out of or relate to the purported agreement, Defendant's Renewed Motion must be denied.

### f.  Defendant's Reliance Upon *Haskins* is Misplaced.

In support of its Renewed Motion, Defendant again relies heavily upon *Haskins v. Ally Financial Inc.*, No. 8:17-cv-1349 (M.D. Fla. Aug. 8, 2017), arguing that "this Court has previously enforced the exact arbitration agreement at issue in this case." *See,* DE 28 at p. 4 (citing *Haskins*, No. 8:17-cv-1349 (M.D. Fla. 2017)). As Defendant is well aware, *Haskins* is inapposite and Defendant's reliance upon it is misplaced. In *Haskins*, the sole issue was whether Defendant had waived its right to arbitration. *See, Haskins*, DE 22 at p. 5 ("The sole dispute between the parties is whether Ally waived its right to arbitration"). In the instant case, no issue of wavier has been implicated. Rather Plaintiff's assertion is that Defendant has failed to meet the requisite multi-pronged evidentiary burden that it needs to meet to gain the relief it seeks. This is pivotal. To reiterate, whereas *Haskins* involved something allegedly done (wavier), this Motion involves numerous things undone (i.e., production of admissible evidence supportive of a claim for relief). In short, *Haskins* is clearly distinguishable from the instant case.

### g.  Defendant is Not Entitled to Dismissal.

For all of the reasons detailed above, the Court cannot compel arbitration as a matter of law. As Defendant seeks dismissal on the same grounds as it seeks to compel arbitration, Defendant's request for dismissal must likewise be denied. Moreover, Eleventh Circuit precedent is clear that actions should generally be stayed, not dismissed, pending resolution through

arbitration. *See, e.g., Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir.1992)(reversing dismissal and holding that actions should be stayed pending arbitration).

**IV.   Conclusion.**

Eleventh Circuit precedent mandates that, before arbitration can be compelled, Defendant must carry its burden to prove, by a preponderance of the evidence, that the Plaintiff is a party to a binding agreement to arbitrate the claims at issue and that Defendant has the right to enforce that agreement. As Defendant has failed to carry its burden with admissible, probative evidence, Defendant's Renewed Motion must be denied as a matter of law.

WHEREFORE Plaintiff respectfully requests an Order from this Honorable Court DENYING Defendant's Renewed Motion to Compel Arbitration and Dismiss Action.

Respectfully submitted by:

/s/ *Benjamin W. Raslavich*
**BENJAMIN W. RASLAVICH, ESQ.**
Florida Bar No.: 0102808
**KUHN RASLAVICH, P.A.**
2124 W. Kennedy Blvd., Suite B
Tampa, Florida 33606
Telephone: (813) 422 – 7782
Facsimile: (813) 422 – 7783
ben@theKRfirm.com
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 21, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ <i>Benjamin W. Raslavich</i>
**BENJAMIN W. RASLAVICH, ESQ.**
Florida Bar No.: 0102808
