UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH AGOSTINO,

      Plaintiff,

v.                                            Case No: 8:18-cv-1202-T-36TGW

ALLY FINANCIAL INC.,

      Defendant.

_____/

## <u>ORDER</u>

This matter comes before the Court upon Defendant Ally Financial Inc.'s Motion to Compel Arbitration and Dismiss Action (Doc. 28), Plaintiff's response in opposition (Doc. 29), and Defendant's reply (Doc. 32). In the motion, Defendant contends that the arbitration provision within the car purchase agreement between Plaintiff and its assignor requires that Plaintiff submit his statutory claims to arbitration. The Court, having considered the motion and being fully advised in the premises, will grant, in part, Defendant Ally Financial Inc.'s Motion to Compel Arbitration and Dismiss Action.

### I.    BACKGROUND

Plaintiff, Joseph Agostino, filed his Complaint alleging that Defendant Ally Financial, Inc. ("Ally") engaged in debt collection activity in violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559, *et seq*. ("FCCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Doc. 1. Agostino alleges the following. Ally made several unauthorized phone calls to his cellular telephone number using "an automatic telephone dialing system, a predictive telephone dialing system, and /or an artificial or pre-recorded voice." *Id*. at ¶ 10. Ally made these calls to collect a financial obligation from Plaintiff which consists of an

alleged debt "for a consumer loan obtained primarily for personal, family, or household purposes." *Id.* at ¶ 12. Plaintiff asked Ally to stop placing calls to his cellular telephone, but Ally continued to do so. *Id.* at ¶¶ 16, 17.

Ally filed this Motion asserting that the alleged debt to which the Complaint refers is a Retail Installment Sale Contract ("RISC") between Agostino[1] and Bill Currie Ford, Inc. (the "Seller") to purchase a 2012 Nissan Titan on October 29, 2016. Doc. 12-1 at 1. Ally contends that shortly after Agostino and the Seller entered into the RISC, the Seller assigned all of its rights and interests to Ally. *See* Doc. 12 at 4 (citing Doc. 12-1 at 1).  The RISC contains the following language:

> RETAIL INSTALLMENT SALE CONTRACT
> –SIMPLE FINANCE CHARGE
> (WITH ARBITRATION PROVISION)
> ...
>
> Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
>
> ...
>
> Seller assigns its interest in this contract to Ally Financial (Assignee) under the terms of Seller's agreement(s) with Assignee. ["Assigned without Recourse" option marked].
>
> ...
>
> You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

---

[1] Jacqueline Agostino is also a party to the RISC but is not a party in this lawsuit. *See* Doc. 1, Doc. 12 at 4, n 1.

> Federal law and the law of the state of our address shown on the
> front of this contract [Florida] apply to this contract.
>
> ...
>
> ARBITRATION PROVISION
>
> ...
>
> EITHER YOU OR WE MAY CHOOSE TO HAVE ANY
> DISPUTE BETWEEN US DECIDED BY ARBITRATION AND
> NOT IN COURT OR BY JURY TRIAL.
>
> ...
>
> Any claim or dispute, whether in contract, tort, statute or otherwise
> (including the interpretation and scope of this Arbitration Provision,
> and the arbitrability of the claim or dispute), between you and us or
> our employees, agents, successors or assigns, which arises out of or
> relates to your credit application, purchase or condition of this
> vehicle, this contract or any resulting transaction or relationship
> (including any such relationship with third parties who do not sign
> this contract) shall, at your or our election, be resolved by neutral,
> binding arbitration and not by a court action.

Doc. 12-1 at 1-2.

On June 11, 2018, Ally filed its Answer and Affirmative Defenses in which it asserted that

"Plaintiff's claims are subject to an Arbitration Agreement requiring mandatory and binding

arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*." Doc. 10 at 6 ¶ 2. The

next day Ally's counsel contacted Plaintiff's counsel to request dismissal based on the Arbitration

Agreement; Plaintiff's counsel refused. Doc. 12 at 5.

The Court denied Ally's original Motion to Compel Arbitration because it lacked the

proper evidence to establish the agreement defining the terms under which Ally obtained the

assignment. *See* Doc. 27; *Agostino v. Ally Fin. Inc.,* No. 8:18-CV-1202-T-36TGW, 2018 WL

6019197, at *1 (M.D. Fla. Nov. 16, 2018). Also Ally neither authenticated the RISC nor otherwise

filed it in an admissible form. Further, no evidence established that the RISC was the true and correct copy or otherwise met the standard of being a business record. *Id*.

Ally has now filed the Declaration of Leandrian Wright (the "Declaration"). Doc. 28-1. The Declaration provides the following. Wright is an employee and authorized representative of Ally and personally knows of the facts in the Declaration and Ally's practices and procedures. *Id*. at ¶¶ 2-3. She has reviewed Ally's business records and other documents, which Ally created and maintained as part of its ordinary course of business. *Id*. at ¶ 3.

Wright reviewed the RISC, which she attached as Exhibit A to the Declaration, and notes it is Ally's regular practice to create, keep and maintain the RISC in the ordinary course of business by individuals who personally know the information within it. *Id*. at ¶ 4, Ex. A. Exhibit A is a true and correct copy of the RISC signed by Agostino and Bill Currie Ford on October 29, 2016. *Id*. at ¶ 5. Bill Currie Ford then assigned the RISC to Ally. *Id*. at ¶ 6.

Wright reviewed the May 7, 2010 GMAC Master Retail-Lease Agreement with Bill Currie Ford (the "Master Agreement") attached as Exhibit B to the Declaration. *Id*. at ¶¶ 9-10, Ex. B. In 2010, GMAC, Inc. changed its name to Ally Financial, Inc. Exhibit B is a true and correct copy of the agreement between Bill Currie Ford and GMAC, and it governs the assignment of the RISC. *Id*. at ¶ 10.

The Master Agreement states it incorporates the "Retail and Lease Documents", (§ III. A. 1); Bill Currie Ford agrees and accepts all provisions, terms, and conditions of each of the Retail and Lease Documents, (§ III. C. 1); GMAC Retail and Lease Accommodations are expressly subject to the terms and conditions of the agreements under which they are extended, (§ III. F. 2); and "Federal law and Michigan law apply to this Master Agreement, including any of the Retail and Lease Documents[,]" (§ III. M). *Id*. at 9-11.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, codifies a "liberal federal policy favoring arbitration," and requires the courts to enforce agreements to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). That policy rules out any "judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals," *id.* at 627, and establishes that the courts should resolve doubts about the scope of arbitrable issues in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983).

Questions of arbitrability must be addressed "with a healthy regard for the federal policy favoring arbitration." *Id.* at 24. Despite this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to arbitrate any dispute to which he has not agreed to submit. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 297 (2010); *Lawson v. Life of the South Ins. Co.,* 648 F.3d 1166, 1170 (11th Cir. 2011). The FAA requires a court to stay its proceedings pending arbitration provided "the applicant for the stay is not in default in proceeding with the arbitration." 9 U.S.C. § 3.

Within this district, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013). Rule 12(b)(1) motions come in two forms: factual attacks and facial attacks. *Id.* Courts deem a motion to compel arbitration as a factual attack because it asserts that a provision in an extrinsic document— an arbitration clause within the body of a contract—deprives the court of its power to adjudicate the claims. *Id.*

On a factual attack, the trial court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). District courts within the Eleventh Circuit have long applied the summary judgment standard when ruling on a Rule 12(b)(1) motion to dismiss that asserts a factual attack on subject matter jurisdiction, when the merits are intertwined with the jurisdictional question. *See id.* at 1530.

The party seeking to avoid arbitration must deny the existence of a valid agreement to arbitrate, identifying evidence in the record to substantiate that denial. *Magnolia Capital Advisors, Inc. v. Bear Sterns & Co.*, 272 Fed. Appx. 782, 785 (11th Cir. 2008). The record must render colorable that party's denial of a valid agreement. *Id.* The district court must resolve all doubt and inferences in the favor of the party denying the existence of a valid agreement. *Id.* at 785-86.

The Court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is ... in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore v. Jefferson Capital Sys.*, LLC, 827 F.3d 1325, 1333 (11th Cir. 2016)) (citation and quotation marks omitted).

When a genuine dispute exists, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Like a traditional summary judgment motion, the Court's examination of substantive law determines which facts are material. *Burch,* 861 F.3d at 1346 (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.' " *Id.* (quoting *Bazemore*, 827 F.3d at 1329).

"[T]here are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Sims v. Clarendon Nat. Ins. Co.,* 336 F.Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envtl. Partners, Inc. v. Johnson,* 863 So. 2d 423, 426 (Fla. 4th DCA 2003) and *Seifert v. U.S. Home Corp.,* 750 So. 2d 633 (Fla. 1999)).

Confronted with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid, or the issue is otherwise non-arbitrable. *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."); *In re Managed Care Litig.,* No. 00-1334-MD, 2009 WL 856321, at *3 (S.D. Fla. Mar. 30, 2009) ("It is the burden of the party challenging a facially valid arbitration agreement to demonstrate that the agreement is in fact unconscionable."). "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 213 (1985) (emphasis in original). If the criteria are met, the Court must issue an order compelling arbitration. *John B. Goodman Ltd. P'ship v. THF Const., Inc.,* 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.,* a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.,* 553 F.3d 1351, 1366 (11th Cir. 2008) ("The role of the courts is to rigorously enforce agreements to arbitrate.") (citation omitted).

### III.    DISCUSSION

Ally argues that the unambiguous terms of the Arbitration Agreement in the RISC compel Agostino to arbitrate his claims because they arise out of, or relate to, the RISC. Ally requests an order compelling arbitration and dismissing this action. It asserts that it is the Seller's assignee and therefore able to compel arbitration under the RISC. Now that Ally has included the Declaration to support its Motion and filed a copy of the agreement referenced in the assignment, it asserts that no basis exists to deny its request to compel arbitration.

Agostino responds that although Ally now attaches the Declaration and the Agreement between the Seller and Ally, it still has not met its burden. He argues: 1) Ally has not met the summary judgment standard for establishing that a valid agreement to arbitrate exists; 2) if it exists, Ally is not an assignee entitled to enforce it; and 3) his claims do not arise from the RISC, thus, his TCPA and FCCPA claims are not subject to arbitration.  Significantly, Agostino still does not deny that he signed the RISC.

Here, Ally has submitted admissible evidence to support its Motion. And because Plaintiff contests whether an agreement to arbitrate exists, the Court will analyze the merits under a "summary judgment-like" standard. *Burch*, 861 F. 3d at 1346.

The Court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 255. And the Court must view all evidence and inferences drawn from the facts in the light most favorable to Agostino as the nonmoving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). However, a dispute is not " 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.' " *Baloco v.*

*Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting *Anderson*, 477 U.S. at 249–50).

"A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat

a motion for summary judgment; there must be evidence from which a jury could reasonably find

for the non-moving party." *Id*. But "a litigant's self-serving statements based on personal

knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853,

857 (11th Cir. 2018) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (2013)).

Ally has met its burden to provide competent evidence on which this Court can rely to find

an agreement to arbitrate exists, and that Ally is an assignee entitled to enforce the arbitration

agreement.[2]  The RISC is in an admissible form because Wright authenticates it and establishes it

as Ally's business record. Further, the assignment is based on a separate document (the "Seller's

agreement with Assignee") which is now in the record in an admissible form. Interestingly,

Agostino has filed no admissible evidence contesting either.

### a.  Agreement to Arbitrate Exists

The threshold question of whether an arbitration agreement exists at all is "simply a matter

of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Without an

agreement, "a court cannot compel the parties to settle their dispute in an arbitral forum.")

*Bazemore*, 827 F.3d at 1329 (citing *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)).

---

[2] The Court notes that Agostino's analysis about the arbitrability of consumer collection cases is overbroad. Plaintiff's TCPA and FCCPA claims may be arbitrable; there is no blanket prohibition against arbitrating these types of claims. Several courts have compelled TCPA claims to arbitration. *See, e.g., Shea v. BBVA Compass Bancshares, Inc.*, 1:12-CV-23324-KMM, 2013 WL 869526, at *1 (S.D. Fla. Mar. 7, 2013). The issue is whether these claims are within the scope of this particular arbitration agreement. *See Gamble v. New England Auto Fin., Inc.*, 735 Fed. Appx. 664, 667 (11th Cir. 2018) (examining the terms of the contract at issue to determine whether its scope included TCPA claims where plaintiff alleged she paid off her auto loan and received text messages soliciting a new loan agreement).

The FAA creates a "presumption of arbitrability" so "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014) (quotation marks omitted). But "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher*, 745 F.3d at 1116 (quotation marks omitted). *See also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (directing courts to "apply[ ] the presumption of arbitrability only" to "a validly formed and enforceable arbitration agreement").

In *Bazemore*, the Eleventh Circuit held that a "district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement ***only if*** there is no genuine dispute as to any material fact" about the formation of such an agreement. 827 F.3d at 1333 (emphasis added). Here, the Court can conclude that the parties have entered into an arbitration agreement; no genuine dispute exists.

Agostino relies on two cases to argue that the Declaration cannot demonstrate the RISC's admissibility as a business record. But these cases are distinguishable for the following reasons. Agostino relies on *Webb v. Midland Credit Management, Inc*., No. 11 C 5111, 2012 WL 2022013, at *4 (N.D. Ill. May 31, 2012), which found that "defendants must demonstrate that the third party author created such documents on a regular basis and kept the document at issue in the course of its regularly conducted business activity" in order "to admit the third party documents" and that defendants "must satisfy these foundational requirements through the testimony of a qualified witness with knowledge of the process by which the third party created the document, thereby demonstrating that the document is trustworthy[.]" 2012 WL 2022013, at *4 (citation omitted).

10

There is no authority showing this  standard applies in the Eleventh Circuit, although the other case cited by Agostino, *Matute v. Main Street Acquisition Corp.*, No. 11-CV-62375, 2012 WL 4513420 (S.D. Fla. Oct. 2, 2012), relies on it. In *Matute*, the defendant "presented even less evidence than the defendant in *Webb*," as defendant presented no sales documents or any evidence from third parties that the records were kept in the regular course of business.  2012 WL 4513420, at *3.  But Ally has presented the evidence that the *Matute* court found to be lacking. Agostino's reliance on *Webb* and *Matute* is unavailing.

The Declaration establishes the RISC as Ally's business record. It need not state that the author knows who created it or was present, only that it was created and kept as part of Bill Currie Ford's regular business practices. *See Walker v. S. Auto Fin. Co.*, No. 8:15-CV-471-T-35TGW, 2015 WL 13305876, at *1 (M.D. Fla. Apr. 24, 2015) (finding declaration of employee of assignee of retail installment sales contract established admissibility of contract as a business record by stating that it is a regular and routine practice of the assignee to keep and maintain such records and that declarant obtained this knowledge by his review of business records kept by defendant in the normal course of its business). *See also In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1268 (11th Cir. 2015) (holding that the business records hearsay exception requires someone knowledgeable about the procedures used to create the alleged business records to testify; the witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation). The evidence is now sufficient for the Court to consider it as part of its analysis.

Under Florida law,[3] arbitration is a "remedial mechanism" that binds an assignee. *Cone Constructors, Inc. v. Drummond Comm. Bank*, 754 So. 2d 779, 780 (Fla. 1st DCA 2000). "Even an assignment only of contract 'rights' not entailing any duty of performance ... must be deemed to include the bargained-for remedial procedure." *Id. See also Marcum LLP v. Potamkin*, 107 So. 3d 1193, 1195 (Fla. 3d DCA 2013) (concluding that the term "party," as used in Florida's arbitration code should not be interpreted "to exclude a contracting party's assignee.") Under Florida law, the remedial mechanism of arbitration "is included in any assignment." *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014).

Because this action arises out of the collection of a debt incurred under the RISC, Plaintiff's claims would have been arbitrable had they been asserted against Bill Currie Ford. *See Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Group, LLC*, 124 So. 3d 968, 972 (Fla. 3d DCA 2013) ("[T]he determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause."). Under Florida law, Bill Curie Ford's assignment of Plaintiff's account and all rights in it to Ally included the right to employ the remedial mechanism bargained for in the RISC. Ally purchased not only Agostino's account, but also the right to compel him to arbitrate his claims against it.

---

[3] The parties argued their respective positions under Florida law. *See generally* Docs. 28, 29. The Court applies Florida law as the choice-of-law provision in the RISC. *See Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1315 (S.D. Fla. 2004) (recognizing that where a contract specifies that state law will be applied, that provision will ordinarily be given effect in deciding the parties' right to arbitrate). In any event, under Michigan law, "nonsignatories of arbitration agreements can still be bound by an agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel." *AFSCME Council 25 v. Wayne Cty.*, 811 N.W.2d 4 (Mich. App. 2011).

**b.  The Arbitrator will Determine the Scope of the Agreement**

As the Court stated in its prior order, Doc. 27 at 7, n. 2, generally, claims brought under consumer debt protection laws may be subject to arbitration. *See, e.g., Shea v. BBVA Compass Bancshares, Inc.*, 1:12-CV-23324-KMM, 2013 WL 869526, at *1 (S.D. Fla. Mar. 7, 2013). The issue is whether these claims are within the scope of the particular arbitration agreement. *See Gamble v. New England Auto Fin., Inc.*, 735 Fed. Appx. 664, 667 (11th Cir. 2018) (examining the terms of the contract at issue to determine whether its scope included TCPA claims where plaintiff alleged she paid off her auto loan and received text messages soliciting a new loan agreement). *See also Walker*, 2015 WL 13305876 at *4 (finding that FDCPA and FCCPA claims were subject to arbitration because the consumer debt was at issue in the alleged excessive and abusive tactics used to collect the debt).

But the Court need not address whether the claims are arbitrable, as the arbitration provision calls for "the arbitrability of the claim or dispute" to be decided by the arbitrator. Doc. 28-1 at 7. The law is clear; parties may contract to have arbitrators resolve the question of arbitrability. *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) ("[O]rdinarily, 'the question of arbitrability ... is undeniably an issue for judicial determination[ ] [u]nless the parties clearly and unmistakably provide otherwise....' " (alterations in original) (quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) ("Hall Street is certainly right that the FAA lets parties tailor some, even many, features of arbitration by contract, including ... which issues are arbitrable...." (citation omitted)).

### c.  Ally Did not Waive its Right to Compel Arbitration

Courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so. *Krinsk v. SunTrust Banks, Inc*., 654 F.3d 1194, 1200 (11th Cir. 2011). To determine whether a party has waived its contractual right to arbitrate, courts apply a two-part test. Courts first ask whether, under the totality of the circumstances, the party acted inconsistently with the arbitration right. *Id*. Inconsistent acts include "substantially invoking the litigation machinery" before moving to compel arbitration; or other conduct manifesting the party's intent to waive arbitration. *Id*.  Then courts determine whether, by doing so, that party has prejudiced the other party. *Id*. (quoting *Ivax Corp. v. B. Braun of Am., Inc*., 286 F.3d 1309, 1315 (11th Cir. 2002)).

Here, Ally filed its Unopposed Motion for Extension of Time to file a Response to Complaint (Doc. 5) on June 7, 2018. Then it filed an Answer and Affirmative Defenses (Doc. 10) on June 11, 2018. The Court granted Ally an extension on June 18, 2018. Doc. 11. Ally then filed its original motion to compel arbitration on June 25, 2018. Doc. 12. Ally did not act inconsistently with its arbitration rights. And Agostino admits that waiver is not at issue. Doc. 29 at 19.

The Court, having provided Ally another opportunity to produce the predicate to establish the RISC and the Master Agreement as business records, and having reviewed that evidence, now finds this case is subject to arbitration. *See Cronin v. Portfolio Recovery Assocs., LLC*, No. 815CV00768EAKEAJ, 2016 WL 1756892, at *2 (M.D. Fla. Apr. 29, 2016) (granting motion to compel arbitration on reconsideration when defendant produced affidavit evidencing assignment of the account at issue).

The Court otherwise finds the remainder of Agostino's arguments, but for one, moot or without merit, including: that Ally cannot enforce the agreement because it is not explicitly named since the RISC defines "We" as the Seller (Bill Currie Ford), Doc. 29 at 9; as a non-party lacking

14

evidence of assignment Ally cannot compel arbitration, *id*. at 12; Ally has not provided evidence that the alleged debt collection activity relates to the RISC, *id*. at 13; Ally has not established that the claims are arbitrable, *id*. at 15; and  Ally's reliance on *Haskins v. Ally Financial Inc*., No. 8:17-cv-1349-VMC-TBM, Doc. 22 (M.D. Fla. Aug. 4, 2017), for the proposition that this Court has enforced this same arbitration clause, is misplaced because it dealt with waiver,[4] *id*. at 19. The Court agrees, however, that a stay of this proceeding and not dismissal is appropriate.

### d.  The Case Should be Stayed

Last, "[t]he FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279, 289 (2002). Likewise,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had.

9 U.S.C. § 3.  The present lawsuit will be stayed, rather than dismissed, pending the arbitration.

### IV.    Conclusion

The Court recognizes the strong preference for arbitration under federal law. But it can only compel parties to arbitrate if they contracted to do so. Under the evidence in the record, Ally has established that it is an assignee of the contract between Agostino and Bill Currie Ford, the contract contains an enforceable arbitration agreement which provides that the arbitrator will

---

[4] Although the court discussed waiver and concluded that Ally had not waived is right to compel arbitration, it ultimately referred the parties to arbitration, based on a contract with substantially the same arbitration provision as the one here, and stayed the case. *See* Doc. 9-1.

determine the issue of arbitrability, and Ally did not waive its right to enforce the arbitration provision. Thus, the Motion is due to be granted.

**Accordingly, it is ORDERED**:

1.      Defendant Ally Financial Inc.'s Motion to Compel Arbitration and Dismiss Action (Doc. 28) is **GRANTED** in part.

2.      The parties are compelled to arbitrate this action.

3.      The case is **STAYED** pending arbitration.

4.      The Clerk is directed to terminate any pending motions and administratively close this case.

5.      The parties shall file a notice informing the Court that the arbitration has concluded, or that their dispute has otherwise been resolved, within ten days of either of such event.

**DONE AND ORDERED** in Tampa, Florida on January 29, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any